No. 28,618.

PHŒBE ANTRIM, *Appellee*, v. THE INTERNATIONAL LIFE INSURANCE COMPANY, *Appellant*.

(275 Pac. 1084.)

Opinion filed April 6, 1929.

*John S. Dean, John S. Dean, Jr.,* both of Topeka, *Charles G. Revelle* and *Emil E. Brill,* both of St. Louis, Mo., for the appellant.

*J. M. Stark,* of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal by the defendant life insurance company from a judgment against it and in favor of the plaintiff, who is the widow of the deceased, under a policy insuring the lives of both husband and wife for the benefit of the survivor of them. The defense was that the policy had been canceled and forfeited for failure to pay premiums after due and legal notice thereof was given, and that the automatic extension of the policy had been exhausted before the death of the insured because of the making of a loan on the policy. The reply alleged under oath that the signature of the plaintiff to the loan certificate, assignment and agreement was a forgery; that she never authorized the making of the loan or assignment of the policy, never consented thereto, received any benefit therefrom, nor knew of it prior to the death of deceased.

Appellant alleges error in the failure of the court to sustain its demurrer to the evidence of the plaintiff and also in the failure to give the jury a peremptory instruction to find in favor of defendant company.

The reply having been verified, we will for the purposes of the demurrer have to place the burden of proof as to the execution of the loan papers by the plaintiff upon the defendant, which is equivalent to an admission that they were not signed by her nor by her authority. Appellant contends that the demurrer to the evidence should have been sustained irrespective of her signature to the loan papers. The record of the order of the introduction of the evidence is not entirely clear and definite, and for that reason we cannot conclude there was error in the overruling of the demurrer to the evidence.

The theory upon which the court overruled the demurrer and later instructed the jury was that the action was upon a joint policy of insurance. Separate applications were made for the insurance and the husband and wife each named the other as beneficiary. The company apparently used the general form of policy, but inserted both names together, designating them as insured and the survivor of them as the beneficiary, using the following language:

". . . Hereby promises to pay one thousand dollars upon receipt of due proofs of the death of Charles H. Antrim or Phœbe Antrim (husband and wife) the insured, to the survivor hereof (Charles H. or Phœbe Antrim) or to such other beneficiaries as may have been duly designated by the insured."

The following is the provision in the policy as to change of-beneficiary:

"The insured may change any designated beneficiary at any time during the continuance of this policy, provided it is not then assigned, by filing with the company a written request accompanied by this policy, such change to take effect upon the indorsement of the same on the policy by the company, whereupon all interest of the former beneficiary shall cease. If no beneficiary shall survive the insured, the policy shall be payable to the insured's executors, administrators or assigns."

The following is part of the provision as to the right to secure a loan on the policy:

"The insured is entitled to cash loans on the sole security of this policy at any time after the payment of three full years' premiums. . . . A proper loan agreement [and assignment] of the policy must be executed by the insured."

Is this a joint policy? In some of the correspondence it is so designated by the officers of the company, but that will not make it such if it is not such. Are both parties insured? Yes, in one way, depending upon a contingency. It was never intended but for one of them to be insured and for the other to be the beneficiary. All parts of the policy should be made effective, and if so and it is joint, how is the privilege of changing beneficiaries to be exercised? Must both parties agree upon another beneficiary? They have acted separately in their applications in the matter of choice of each other. Why can they not under this privilege continue to exercise the privilege separately? It is ultimately only for one such beneficiary. Upon the death of the husband the whole matter is terminated and the choice of beneficiary for the insurance on plaintiff's life is of no more concern.

"Where a policy is on the lives of two persons, the proceeds being payable to the survivor, each of the two persons is an express party to the contract, and, by the terms of the policy, each may be bound by the conduct of the other and obligated to perform the whole undertaking, but they are not joint tenants, as their respective expectancies depend on different contingencies and cannot vest at the same time." (37 C. J. 410.)

"The general rule that insured cannot assign or transfer the policy without the consent of the beneficiary has no application where the policy by its terms gives insured the right to change the beneficiary, or assign the policy, provided this is done in the form expressed in the contract. In such case, the right of the beneficiary vests conditionally only, and he acquires no vested right or interest in the policy." (37 C. J. 434.)

"Although the interest of the beneficiary in a life policy is a vested one,

nevertheless the insured may enter into such arrangements with the insurer as may be agreed on, either as to the persons who are to receive the benefit of the policy, or as to what control over it the insured is to exercise. In this respect an insurance policy does not differ from any other contract, and is subject to the same general rules of interpretation, and the insured may reserve his right to change the designation of the beneficiary in whole or in part. In such case no indefeasible interest is vested in the named beneficiary nor settlement made upon him which cannot be revoked, and such reservation may be expressed in the policy itself or some instrument properly made a part thereof." (2 Joyce on the Law of Insurance, 2d ed., § 731.)

"Provisions of a life insurance policy upon the lives of two persons, providing for the payment of the insurance fund to the survivor of the first decedent, examined, and held, that the policy in question, so far as the insurance fund payable on such contingency is involved, is a several policy upon the life of each of the assured, and that the interest of the assured persons in such expectancy is not a joint tenancy, by reason of which one takes by the right of survivorship upon the death of the other, but that the survivor takes, if at all, under the contract." (*Equitable Life Assur. Soc. of the U. S. v. Weightman*, 61 Okla. 106, syl. ¶ 3.)

The reasoning in the case last cited applies well to the instant case to the effect that while the policy insures both lives and for the purpose of convenience adopts a joint expression designating both as insured and joint enjoyment of intermediate benefits and privileges, the real gist of the contract was that it was a separate policy upon the life of each of the insured for the separate benefit of each of the insured. It does not have in itself the usual four essential unities for joint tenancy, viz., unity of interest, title, time and possession.

If the policy is not a joint contract as to the plaintiff and her husband, now deceased, there can be no question as to his right to effect a loan on it without her joint action thereon or her consent thereto or approval thereof. Appellee has cited a number of cases where loans on policies quite like this were held invalid because made without the signature or consent of the wife, but upon careful examination of these cases it is found that no provision was contained in those policies as to the right to change beneficiaries.

A very strong case cited is that of *Life Insurance Co. v. Willoughby,* 99 Miss. 98, holding that the wife was not estopped or in any way bound by her husband's action in making a loan on the policy without her approval. The same court ten years later in the case of *Lamar Life Ins. Co. v. Moody,* 122 Miss. 99, referred to the former decision as being on a policy where the insured had not reserved the right to change the beneficiary, and concluded as follows:

"The insured may pledge policy to the company for loan without the consent of the beneficiary, where it appears that insured reserved the right to change the beneficiary. Beneficiary has no vested right in the proceeds of such policies." (Syl.)

The contingency at the time the policy in the case at bar was issued no longer exists. We are now able, since the happening of the contingency, to designate the particular parties then referred to by indefinite terms. The insured is the husband; the beneficiary is the plaintiff. The plaintiff is not now and never can be the insured under this policy. The insured had the full right to make a loan on the policy without consulting the beneficiary by the terms of the loan provision, and although the company required her signature and approval, and the husband may have resorted to improper means to meet that requirement, it was unnecessary, for his own signature was sufficient under the terms of the policy.

"So an assignment executed by a person whose life is insured, but not by the beneficiary, is inoperative. If, however, the policy so stipulates, or, the right to assign is reserved, the consent of the beneficiary is not necessary." (4 Joyce on the Law of Insurance, 2d ed., § 2327.)

In addition to the loan provision on the subject the assignment of the policy for loan purposes is a temporary and limited change of beneficiary which the husband could make without the wife's signature or consent.

There is another reason in this particular case why the husband could make this loan and make the assignment of the policy as security therefor, and that is as the authorized agent of the plaintiff. In her separate application for the insurance she gave his name and address in answer to the following question: "To whom shall any notice be sent? Give name, residence and street number." She testified that he always kept possession of the policy himself, and that he sent the premiums to the company and transacted all the business with the company; that she intrusted all that to him. This would constitute him as her agent for all usual and ordinary transactions concerning such business matters, but of course not to the extent of signing and acknowledging her name and signature to written instruments.

There is a third reason why the plaintiff cannot recover in this action. Plaintiff knew of the notice having been sent to her and her husband on September 1, 1925, stating the premium due July 31, 1925, had not been paid, and that unless paid within thirty days the

policy would be forfeited, canceled and of no effect except as provided therein. The policy provided for automatic extended insurance and for deduction of indebtedness in connection therewith. There is no evidence of any investigation as to amount of indebtedness or period of such extension. This very notice contained a statement of the delinquency—premium less reduction, $27.90, and P. L. Int. (policy loan interest), $6.66; total, $34.56. Can the plaintiff with this notice before her say she never heard of a loan having been made on the policy? The evidence shows the loan was for $111. Interest for one year at the usual rate is $6.66. The policy states that "interest shall be at the rate of not to exceed six per cent per annum." On October 12, 1925, they were both notified by letter from the company that the policy had lapsed for failure to make payment of premium, and the letter contained a suggestion of reinstatement if done within a limited time. It also contained two references to interest being due, and gave the amount necessary for reinstatement as $34.84 instead of the usual semiannual premium of six or seven dollars less. On January 9, 1926, they each made an application for reinstatement, inclosing two checks totaling $35.34, to pay delinquency in premium and also interest on the policy loan as per statements received from the company. The applications for reinstatement were not granted because of medical examination, of which they were duly notified on January 27, 1926, and the two checks were returned to them. By deducting the amount of the loan, the automatic extension ended about two months before the death of the husband, which was nearly eighteen months after the payment of premiums became delinquent, about sixteen months after she had been notified of interest being due on the policy loan, and nearly a year after she and her husband had sent the interest and premium required for reinstatement. These facts shown by letters and documents introduced in evidence preclude or estop the plaintiff from asserting an attitude inconsistent therewith.

We therefore conclude that for these three reasons, viz., that the policy not being a joint policy the husband could under its provisions make a loan without the consent of his wife; second, that the wife had in her application and by her subsequent conduct constituted him as her agent to transact all usual business matters in connection with such policy, and his knowledge was therefore her knowledge of such transactions; and third, because she is estopped from maintaining an attitude with reference to a knowledge of the

loan that is inconsistent with her previous acts and business connection therewith as shown by documents and letters—the trial court should have given the peremptory instruction requested by the defendant and rendered judgment for defendant for costs.

The judgment is reversed and cause remanded with instructions to set aside the judgment heretofore rendered, and enter judgment for the defendant for costs.