### O'BOYLE v. HOME LIFE INS. CO. OF AMERICA.
### No. 3955.

District Court, M. D. Pennsylvania.
Aug. 16, 1937.

**34**

Robert J. Ruane and George Morrow, both of Scranton, Pa., for plaintiff.

Charles S. Delaney, of Scranton, Pa., and Arthur S. Arnold, of Philadelphia, Pa., for defendant.

JOHNSON, District Judge.

This is a motion and rule thereon to take off a nonsuit and grant a new trial.

The plaintiff, widower of Jennie A. O'Boyle, brought an action in assumpsit to recover $5,000 on two policies of insurance, each in the amount of $2,500, insuring the lives of both Michael J. and Jennie A. O'Boyle, husband and wife, for the benefit of the survivor of them. The first policy, No. 94,548 was issued on May 21, 1921, and the second policy, No. 105,000, was issued on December 18, 1922. The defense was that prior to the death of Jennie A. O'Boyle, policy No. 105,000 was exhausted by reason of a loan to the full extent of the policy, and policy No. 94,-548 was surrendered for cancellation and the cash surrender value thereof was received by both the insured. Plaintiff's reply, and his testimony at the trial, was to the effect that he never signed the application for the loan or cash surrender value of the policies; never authorized or consented to the same; never received any benefit therefrom, or knew of these transactions prior to the death of his wife. The court, on defendant's motion, granted a nonsuit for the reason that since the death of the wife, that event made the husband the beneficiary and the wife the insured, who alone therefore had the power to make loans without the consent of the beneficiary.

The nonsuit was based on the reasoning in the case of Antrim v. International Life Ins. Co., 128 Kan. 65, 275 P. 1084, 1086, whose facts are quite similar to the case at bar. However, there the wife was plaintiff and the husband was the deceased. The Supreme Court of Kansas there said: "The contingency at the time the policy in the case at bar was issued no longer exists. We are now able, since the happening of the contingency, to designate the particular parties then referred to by indefinite terms. The insured is the husband; the beneficiary is the plaintiff. The plaintiff is not now and never can be the insured under this policy. The insured had the full right to make a loan on the policy without consulting the beneficiary by the terms of the loan provision, and although the company required her signature and approval and the husband may have resorted to improper means to meet that requirement, it was unnecessary, for his own signature was sufficient under the terms of the policy."

The question to be determined is, whether under the provisions of the policies of insurance, the wife alone, without the consent of her husband, had the power to make loans and obtain the cash surrender value.

The Supreme Court of Oklahoma, in Equitable Life Assurance Society v. Weightman, 61 Okl. 106, 160 P. 629, 632, L.R.A.1917B, 1210, construed a policy similar to the ones in the case at bar and found that it was a joint policy so far as concerned the life time benefits. In the opinion the court said: "It seems to us that the four unities might concur in the benefits which might have arisen under the policy during the lives of both parties, aside from the benefit of expectancy, but the expectancies, which constituted the principal subject-matter, were wholly contrary, each to the other, and different in the essentials. To technically analyze the contract, as to the estates created by it, it brought into being at least two entities of ownership: (1) An ownership or estate in the benefits which might have accrued during the lives of both parties exclusive of the principal expectancy in the insurance fund, which was a present, joint estate, which would lapse on the death of either of insured; and (2) an estate severally to each of the insured in the principal expectancy in the insurance fund of $2,000, which was

in the nature of a contingent remainder, depending upon a contingent determination of the preceding estate; it remaining uncertain whether the estate limited in the future would ever vest. In the orderly course of events, if the premiums had been kept paid, it was certain that one or the other estates, designated as being in the nature of an estate in remainder, was certain to vest, and yet neither owner possessed any certainty that his particular interest would vest."

In Spicer v. New York Life Ins. Co. (D.C.) 263 F. 764, the court held that a similar policy was joint as to life time benefits. At page 766 of 263 F. the court said: "I have carefully read the policy of insurance sued on in this case, and am convinced that it is a joint contract enforceable only in favor of the survivor of the insured. A similar contract was considered by the Supreme Court of the United States in Connecticut Mut. Life Ins. Co. v. Schaefer, 94 U.S. 457, 24 L.Ed. 251, and was held to be joint. The policy designates Mr. and Mrs. Spicer as the insured; they agreed that the policy be made payable to the survivor; the death of one ripened the liability under the policy; they agreed to pay the premiums; and, certainly, both became liable therefor. The right reserved to change the beneficiary is made dependent upon the consent of the insured, meaning thereby both Mr. and Mrs. Spicer. Under this provision neither of the insured could have been deprived of rights under the policy except by the consent of the other. In my opinion this had the effect of creating a vested interest in the survivor, since both of the insured had to consent to a change of beneficiary."

In the policies before the court, separate applications bearing the same date were executed by the husband and by the wife. In answer to the question of the type of policy applied for, each stated "20 Payment Joint Life" in reference to policy No. 94,548 and "Joint 20 Payment Life" in reference to policy No. 105,000. At the bottom of page 1 of policy No. 105,-000 there is stated, "Joint Edition G Limited Payment Life.' On the last page of policy No. 94,548, under "Table of Loan or Cash Values, Paid Up and Extended Term Insurance attached Hereto," it is stated: "Plan Twenty Payment Life Joint 37–35 Equal Age 36 Age." In the same place on policy No. 105,000, it is stated: "Plan 20 P L Equal Age 37 Age 38–36." It appears that the tables of cash values of the policies are based on the joint or equal age of the two insured. Both policies name the beneficiary as "the survivor of the two insured" and the insured as "Michael J. O'Boyle and Jennie A. O'-Boyle." Policy No. 94,548 provided that: "The two insured if living on the twenty-sixth day of May 1941, provided the premiums therefor payable in each insurance year shall have been paid in cash, may select one of the following options: 1. Continue policy without further payment of premiums. 2. A cash payment of $1,-682.50. 3. An annual income of $174.20 payable during the natural life of the two insured." Policy No. 105,000 contained the same provisions. Each policy provided, "at any time after three full years premiums have been paid and while this policy is in full force, the Company will loan, upon proper assignment of the policy, and upon the sole security thereof, an amount, which * * * shall not exceed the cash surrender value * * *," and in reference to premium loans, "This action of the Company is contingent upon the filing a request for such premium loan by the owner of the policy * * *." Policy No. 105,000 provided: "2. Re-Instatement. In case of default in the payment of any premium or interest, the Company will reinstate the policy at any time, upon written application by the two insured. * * * 3. Change of beneficiary. The two insured may, at any time, change the beneficiary under this policy, with the written approval of the company, and with corresponding endorsement upon the policy, whereupon all rights of the former beneficiary shall cease." Policy No. 94,548 contained the same provisions except that the word "two" was not inserted before the word "insured."

The exhibits show that the request for change in manner of paying premiums; applications for reinstatement of the policies; policy loan agreements and request for cash surrender value were all executed in the names of both Jennie A. O'Boyle and Michael J. O'Boyle. The checks for the cash surrender value and loans were made payable to "Michael J. O'Boyle and Jennie A. O'Boyle."

It is clear, from the applications, the policies, and the acts of the parties in re-

lation to the policies, as evidenced by the exhibits and testimony, that the two insurance policies were joint in so far as the lifetime benefits were concerned. The applications were for joint policies. The policies themselves stated that they were joint; its provisions required the joint acts of the two insured in matters affecting change of beneficiary; reinstatement in case of lapse; loans; election of options provided in the policies if the two insured were living at the maturity of the policies. The Insurance Company treated the policies as joint by requiring, in every instance, the joint acts of both in matters affecting the policy and in making the checks for loans and cash surrender values payable jointly to the insureds.

■ As to the lifetime benefits, the policies were clearly joint requiring the joint action of the husband and wife in any matter affecting their interest in the policies.

■ In Pennsylvania the rule is that whenever an estate, real or personal, vests in two persons who are at the time husband and wife, a tenancy by the entireties arises. Bramberry's Estate, 156 Pa. 628, 27 A. 405, 22 L.R.A. 594, 36 Am.St.Rep. 64. While perhaps a joint policy in its entirety insuring the lives of husband and wife, and payable to the survivor, is not technically an estate by the entireties in that the estate in the principal expectancy will only vest in the survivor, yet there is a marked and clear analogy. As to the joint interest in the cash and loan value of the policy and other lifetime benefits, there is technically an estate by the entireties and the law relating to estates by the entireties governs. The cash surrender or loan value is an estate both can enjoy during their lifetime and in which both have a vested interest. It is like a tenancy by entireties in a bank account against which loans or withdrawals can be made. In fact, the rights of the company and the insured, in relation to a loan on the policy, are generally the same as those of any other borrower and lender. 32 C. J. 1166, § 279. The law in relation to a tenancy by the entireties in a bank account is stated in Milano et ux. v. Fayette Title & Trust Co., 96 Pa.Super. 310, where an account of $1,800 was opened on the books of the defendant bank in the name of the plaintiffs, husband and wife. The husband alone withdrew all the money. Subsequent-

ly, both the husband and wife presented a check for $1,800 and the bank refused payment, whereupon the plaintiffs sued the bank. In its opinion, the Superior Court of Pennsylvania said: "The money on deposit did not belong to the husband, or half to him and half to his wife, or in part to either, but to both of them undividedly. * * * In the absence of an express agreement that the money could be paid to either or only one of them * * * the implied agreement would apply that the money could not be withdrawn except upon checks or orders signed by both of them, and the bank could pay differently only at its peril. To hold otherwise would put it in the power of either to destroy the estate by entireties by withdrawing the fund and applying it to his or her own use, without the joinder or acquiescence of the other spouse; which is directly opposed to the nature and character of a true estate by entireties, like this one. The right of survivorship of a true tenancy by entireties, which is one of its chief incidents, cannot be destroyed but by the joint act of the two. * * * Neither husband nor wife can sever a true tenancy by the entirety." See, also, Pennsylvania Trust Co. v. Mischik, 96 Pa.Super. 255.

The case of Antrim v. International Life Insurance Co., supra, on which the court based the nonsuit, is not controlling in this case, although the facts are very similar. The court in the Antrim Case, in reasoning that the policy was not joint, said: "We are now able, since the happening of the contingency, to designate the particular parties then referred to by indefinite terms. The insured is the husband; the beneficiary is the plaintiff. The plaintiff is not now and never can be the insured under this policy." This court cannot concur in that reasoning. The parties to the contract were never referred to by indefinite terms. Both husband and wife were specifically designated as the insured and were such, having the rights of an insured under the policy, during their joint lives. Furthermore, the Kansas court, instead of construing the policy with reference to the intention of the parties at the time of entering into the contract, interpreted the policy and the rights of the parties as of the time the policy was matured. "A contract of insurance is to be interpreted by the same rules as is any other contract, and must be so interpreted as to give effect

to the mutual intention of the parties as it existed at the time of contracting, so far as such intention is ascertainable. 16 Am. & Eng.Ency. of Law (2d Ed.) 927; Yoch v. Home Mutual Insurance Company, 111 Cal. 503, 44 P. 189, 34 L.R.A. 857." Mc-Caffrey v. Knights of Columbia, 213 Pa. 609, 612, 63 A. 189; see, also, 13 C.J. p. 523.

In concluding that the policy was not joint, the Kansas court relied on the case of Equitable Life Assur. Society v. Weightman, supra. But in that case the issue related to the death benefits alone where one spouse murdered the other. The court in that case held that the contract was not joint as to the estate in expectancy. It was this conclusion that the Kansas court adopted. But as is evident from the above quotation of the Weightman Case, the Oklahoma court found that the policy was joint as to the lifetime benefits.

Furthermore, the conclusion of the Kansas court was supported by two factors which do not appear in the case at bar. The court in the Kansas case concluded: "Second, that the wife had in her application and by her subsequent conduct constituted him as her agent to transact all usual business matters in connection with such policy, and his knowledge was therefore her knowledge of such transactions; and, third, because she is estopped from maintaining an attitude with reference to a knowedge of the loan that is inconsistent with her previous acts and business connection therewith as shown by documents and letters—the trial court should have given the peremptory instruction requested by the defendant and rendered judgment for defendant for costs."

In the case at bar there was some testimony that the plaintiff's wife was authorized to pay the premiums on the policies. The defendant conceded, however, that there was not sufficient evidence for the court to hold as a matter of law, that the plaintiff had constituted his wife as his agent, but that the question of agency was for the jury. In the case at bar there has been no suggestion of estoppel.

The conclusion of the court is that the policies in the case at bar required the joinder of the husband and wife to obtain a loan, or cash surrender value of the policies. One of the insured alone could not legally do so without the joinder of the other. Consequently defendant's motion for a nonsuit should not have been granted.