## The Kensington National Bank of Philadelphia v. Sampson

*Henry Arronson,* for plaintiff in interpleader.
*W. Heyward Myers, Jr.,* for defendant.
*Harry R. Kozart,* for claimant.

WINNET, J., August 28, 1941.—This is a dispute over the proceeds of a life insurance policy. It was issued on April 24, 1920, by the Scranton Life Insurance Company and designated "the insured" as either Samuel Sampson or Annie Sampson and "the beneficiary" the one surviving husband or wife. The policy is designated as a "joint life policy". It carries with it right of revocation and provides for payment of the premium each year "during the joint lifetime of the insured".

The provisions of the policy are on the whole the standard provisions, providing in the attesting clause it shall not be binding until it is delivered "to the insured during their lifetime" and good health.

On April 25, 1928, the policy was converted into "fully paid-up joint life insurance for $1,140" subject to all conditions of the policy. This was done by reason of the nonpayment of premiums.

On September 28, 1937, Samuel Sampson delivered to plaintiff, Kensington National Bank, an absolute assignment, duly acknowledged before a notary public, bearing the signature of Samuel Sampson, insured, and Annie Sampson, insured.

Samuel Sampson died on June 20, 1940. A claim to the proceeds was made by Annie Sampson as "the one surviving". The Kensington National Bank, as the assignee of the policy, brought suit against the Scranton Life Insurance Company, which in turn interpleaded both claimants to the proceeds.

The trial was on the interpleader issue. Plaintiff, the bank, proved the delivery of the assignment by Samuel Sampson. Defendant in the interpleader issue, Annie Sampson, denied that she signed the assignment and offered conclusive proof that her purported signature was a forgery. The jury was instructed to bring in a special finding on whether Annie Sampson's signature was genuine, and a general verdict. In its special finding the jury found that Annie Sampson had not signed the assignment, and by its general verdict found in her favor in the sum of $1,216.75, the amount admitted to be due under the policy.

Plaintiff has filed a motion for new trial and motion for judgment n. o. v. At the argument only the motion for judgment n. o. v. was pressed by plaintiff. The basis of plaintiff's contention is the assertion, which was timely presented in points for charge which were refused, that Samuel Sampson in his lifetime had the right to effect a loan and assign the policy without the consent or signature of Annie Sampson.

To sustain its argument plaintiff contends that the contract of insurance was a separate policy upon the life of each of the insured, for the wholly separate benefit of each of the insured; since the "change of beneficiary and assignment" clause provided "The insured may, without the consent of the beneficiary, effect a loan against this policy", each could and Samuel Sampson did effect such a loan; and further, any doubt as to who was the beneficiary and who the insured no longer exists since the happening of the contingency of death: Samuel Sampson was the insured, Annie Sampson the beneficiary, and the insured could make a loan and assign the policy without the consent of the beneficiary. Plaintiff finds support for its argument in Equitable Life Assurance Society of the U. S. et al. v. Weightman, 61 Okla. 106, 160 Pac. 629, and Antrim v. International Life Insurance Co., 128 Kan. 65, 275 Pac. 1084.

We cannot accept plaintiff's argument with or without these authorities. Such a construction of the policy is strained and artificial. It disregards its plain and simple language. This was a joint policy. The lives insured were Samuel Sampson *and* Annie Sampson. It provided for the payment of the principal sum upon receipt of due proofs of death of either Samuel Sampson *or* Annie Sampson to the one surviving. That is the feature of a joint policy, that is the way it operates. The use of the word "or" does not change it to a several policy. It *is* called a "joint policy". The premium is payable during the "joint lifetime" of the insured. Provision is made to continue the policy in force as "paid-up joint insurance" and it actually was later converted not as paid-up insurance but as "paid-up joint insurance".

"Joint" signifies a combined and undivided interest. It is used to express a common property interest enjoyed, or a common liability incurred, by two or more persons. Annie and Samuel Sampson were the two peo-

ple who had the common property interest in this policy. The term "insured" applied to both of them. This is clearly indicated in the attesting clause where it is provided that the policy was not to be binding until it was delivered to the "insured during *their* lifetime and good health". To accept plaintiff's contention and the reasoning of the Antrim case that the insured could not be determined until the happening of the contingency of death does violence to the expressed terms of the policy and violates the fundamental law of interpretation of contracts. A primary rule of construction is that a court must ascertain and give effect to the mutual intention of the parties. A contract must be construed with reference to the intention of the parties at the time of entering into the contract. There can be no doubt from a reading of the policy that the intention of the parties was to make one the beneficiary upon the death of the other. The lives of both were insured, and on the first page of the policy the names of Samuel Sampson and Annie Sampson are bracketed under the title "The Insured". Thereafter the printed provisions used the term "the insured" in the singular. In the cash loan provision it speaks of the owner in the singular. The convenience of the insurance company in having printed forms to suit the terms of most insurance contracts cannot defeat the intention of the parties.

A test of that intention is a consideration of the benefits which the policy created. At the time it was issued they were: (1) To make cash loans; (2) to surrender the policy for cash; (3) to elect certain options; (4) to change the beneficiary; (5) to assign the policy; (6) to pay death benefits. Can it be seriously argued that it was the intention of either of the parties who were insured to allow the other independently to make a cash loan; to surrender the policy for cash; to elect without consent of the other certain of the options; to assign the policy or to change the beneficiary without consulting the other? The whole essence of the contract

was to give to one benefits upon the death of the other. To allow one person to change it destroys the whole plan of insurance and clearly the intention of the parties.

The "one surviving husband or wife" on the first page of the policy is bracketed under the term "The Beneficiary". During their lives both are expectant beneficiaries. That is why they took the policy to protect or benefit each other. It is unthinkable that this joint policy could be used by one of the parties solely and exclusively for his own benefit. It is equally unthinkable after the policy was converted to a full-paid policy and was designated as a fully-paid joint life insurance contract of $1,140 that one of the parties could take for himself, without the consent of the other, the full $1,140.

It is significant that plaintiff required the signature of Annie Sampson before it made its loan on the policy. This manifested an interpretation of the contract which is contrary to the one urged at the present time. The conduct of the parties to a contract constitutes an authoritative interpretation of the agreement: Fidelity Trust Co. v. The Travelers Insurance Co. et al., 320 Pa. 161, 166; Restatement of Contracts, §235 (e).

Spicer v. New York Life Ins. Co., 263 Fed. 764, and O'Boyle v. Home Life Insurance Company of America, 20 Fed. Supp. 33, are two well-reasoned authorities. Both indicate that in a joint policy the joint action of husband and wife is necessary on any matter affecting their interest in the policy. In the O'Boyle case the insured was "Michael J. O'Boyle and Jennie A. O'Boyle". The use of "and" is the distinguishing point on which plaintiff rejects its authority. The reasoning of the case would apply with equal force if the policy had been worded as the present one, making the proceeds payable to either Michael J. O'Boyle or Jennie A. O'Boyle. In neither case were death benefits payable to both parties; they were to be paid to either one or the other.

The intention of the parties seems to be so clear that if it were necessary we could substitute for the word "or" the word "and". Words may be inserted or substitution made in order to give effect to the known intention of the parties: Nusbaum v. Hartford Fire Ins. Co., 276 Pa. 526. There is, however, no necessity for such substitution. The policy clearly indicates that the death benefits were to be paid to the survivor. The husband could not without the consent of his wife change that provision. By making such a loan on the policy he attempted to make such a change. He not only used up its cash value, but also deprived his wife of the benefit of her survivorship. The jury has determined that her signature on the assignment was a forgery. Without such signature her right could not be affected. The general verdict of the jury in favor of Annie Sampson on the interpleader issue was proper. The motion for judgment n. o. v. must be refused.