## Kensington National Bank of Philadelphia, Appellant, *v.* Sampson.

**44**

Argued October 15, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Simon Pearl*, with him *Henry Arronson*, for appellant.

*Harry R. Kozart*, for appellee.

OPINION BY CUNNINGHAM, J., April 29, 1942:

This appeal was taken by The Kensington National Bank of Philadelphia, plaintiff in an interpleader issue, from the judgment of the court below, entered upon a verdict awarding to Annie Sampson, defendant in the issue, the proceeds of a joint life insurance policy (amounting to $1216.75), issued by the Scranton Life Insurance Company on April 24, 1920, upon applications made therefor by the said Annie Sampson and her husband, Samuel Sampson.

Under the terms of the policy, described as a "15 Payment Joint Life" type, with an annual premium of $277.15, the company agreed to pay the sum of $5,000 "upon receipt of due proofs of the death, during the continuance of this policy, of either

"SAMUEL SAMPSON

| | | |
|---|---|---|
| OF | *PHILADELPHIA,* COUNTY OF *PHILA-* *DELPHIA,* STATE OF *PENNSYLVANIA* | THE INSURED |
| OR | ANNIE SAMPSON | |

OF *PHILADELPHIA,* COUNTY OF *PHILA-* *DELPHIA,* STATE OF *PENNSYLVANIA*

| | |
|---|---|
| TO THE ONE SURVIVING | THE BENE- |
| HUSBAND OR WIFE | FICIARY" |

By endorsement, dated April 25, 1929, the policy, being in default "by reason of the non-payment of the premium note due April 20, 1928," was "converted into fully Paid Up Joint Life Insurance" for $1140.

By a paper dated September 28, 1937, purporting to be signed by the insureds all their right, title, and interest in the policy, was assigned to The Kensington National Bank of Philadelphia, appellant herein. The assignment was accepted by the bank on the same date and on October 4, 1937, the insurance company acknowledged receipt of a copy of the assignment upon which it placed the following endorsement: "Received and duplicate filed this 4th day of October, 1937 assuming, however, no responsibility as to its validity or sufficiency."

The applicable provision of the policy relative to the assignment thereof reads: "The Insured may, without the consent of the Beneficiary, ...... assign it as provided herein ...... The Company shall not be deemed to have knowledge of any assignment of this contract or any interest therein, unless a duplicate or certified copy of such assignment is filed at the Home Office of the Company. No responsibility is assumed by the company as to the sufficiency or validity of any assignment."

Samuel Sampson died on June 20, 1940, and on July 30, The Kensington National Bank claiming, under

and by virtue of the above mentioned assignment, brought suit against Scranton Life Insurance Company to recover $1216.75, the above referred to paid up value of the policy plus certain participating benefits.

The insurance company presented its petition to the court below setting forth, inter alia, that the "identical money" for which the bank had brought suit "is also claimed by Annie Sampson"; that it has no interest in the money, and desires to pay it into court or dispose of it as the court shall direct. Counsel for Annie Sampson and the bank joined in a request for an interpleader; the court directed the bank and Annie Sampson to interplead and that the insurance company pay to the bank, as trustee, the sum of $1216.75 in discharge of all liability under the policy. Appropriate pleadings were filed by the bank as plaintiff in the interpleader and Annie Sampson as defendant therein.

The material averments of Annie Sampson's answer were to the effect that she did not on September 28, 1937, or any other date, assign the policy to the bank "or anyone else"; that she has been advised and believes that on the date mentioned "Samuel Sampson executed and delivered [to the bank] an assignment of said policy ...... which said assignment contains therein the signature, 'Anna Sampson' "; that the signature, "Anna Sampson" is not her signature "but was affixed to said assignment" by some person unknown to her; and that she neither executed the assignment nor authorized any person to execute it for her.

The case came on for trial before WINNET, J., and a jury. The evidence consisted of the admission in evidence of undenied averments in plaintiff's pleadings and the testimony of Annie Sampson and a number of witnesses called by her.

It is not now controverted by the bank that, as stated by the trial judge in an opinion hereinafter referred to, Annie Sampson "offered conclusive proof that her pur-

ported signature was a forgery." At the conclusion of the testimony the trial judge submitted to the jury, in writing, the following question for a special finding: "Was the assignment to The Kensington National Bank of Policy No. 32855, issued by the Scranton Life Insurance Company, signed by Annie Sampson, the defendant in the interpleader issue?"

After directing the jurors to answer that question "Yes" or "No," according to the weight of the evidence, they were instructed to render a general verdict in favor of Annie Sampson in the sum of $1216.75 if they found she had not executed the assignment, but if they found otherwise to render a verdict in favor of the bank for the same amount. The answer of the jurors upon the special finding was "No," and their general verdict was for Annie Sampson in the amount directed. The bank's motion for judgment in its favor, notwithstanding the verdict, was denied and judgment entered on the verdict. This appeal is by the bank from that judgment.

The single assignment of error is based upon the denial of appellant's motion for judgment n. o. v.; that motion was predicated upon the contention that appellee's husband could, as a matter of law, assign the policy and thereby defeat her rights both as an insured and as a beneficiary thereunder.

Counsel for appellant point to the provision of the policy entitled, "Change of Beneficiary and Assignment." We have quoted above the portion of that paragraph relating to assignments. It also provides: "The insured may, without the consent of the Beneficiary, ...... change the Beneficiary hereunder, such change to take effect only upon endorsement of the same on the policy by the Company, ......" No such endorsement appears upon this policy. What was here attempted differs materially from a mere change of beneficiary. It was an attempt by the husband to "assign, transfer and set over," without her consent, all of his wife's "right, title and interest" as one of the

*insureds* named in the policy. The language of this subsidiary "provision," insofar as it applies to a change of beneficiary, is not in harmony with the main provisions of the insurance contract as set forth on the first page of the policy. It was evidently intended for use in a "single" life policy in which the named beneficiary would have merely an expectancy. Here, the appellee occupied a dual position; she had not only an *expectancy,* but also a vested *interest* as one of the insureds. Such cases as *Shay v. Merchants Banking Tr. Co.,* 335 Pa. 101, 6 A. 2d 536, *Fidelity Tr. Co. v. Travelers Ins. Co.,* 320 Pa. 161, 181 A. 594, and *Lemley v. McClure,* 122 Pa. Superior Ct. 225, 185 A. 878, cited for appellant, are therefore not applicable.

Although appellant contends this is not a joint policy, we adopt the following excerpt from the opinion of the court below, written by the learned trial judge: "This was a joint policy. The lives insured were Samuel Sampson *and* Annie Sampson. It provided for the payment of the principal sum upon receipt of due proofs of death of either Samuel Sampson *or* Annie Sampson to the one surviving. That is the feature of a joint policy, that is the way it operates. The use of the word 'or' does not change it to a several policy. It *is* called a 'joint policy.' The premium is payable during the 'joint lifetime' of the insured. Provision is made to continue the policy in force as 'paid up joint insurance' and it actually was later converted not as paid up insurance but as 'paid up joint insurance.' 'Joint' signifies a combined and undivided interest. It is used to express a common property interest enjoyed, or a common liability incurred, by two or more persons. Annie and Samuel Sampson were the two people who had the common property interest in this policy. The term 'insured' applied to both of them. This is clearly indicated in the attesting clause where it is provided that the policy was not to be binding until it is de-

livered to the 'Insured during *their* lifetime and good health.' "

It follows that no change affecting the interest of either in the contract could be made without the consent of the other. As remarked by the court below: "The whole essence of the contract was to give the one benefits upon the death of the other. To allow one person to change it destroys the whole plan of insurance and clearly the intention of the parties."

The case of *Spicer v. New York Life Insurance Co.,* 263 F. 764, (affirmed, 268 F. 500 (CCA 5), certiorari denied 255 U. S. 572) is close on its facts and the court came to a similar conclusion.

There, a joint policy was issued on the lives of husband *and* wife who were designated as the insured, payable to the survivor. Although the husband murdered his wife, thus disqualifying himself as a beneficiary, the court rejected a claim by the administrator of her estate for the reason that the policy was a "joint contract enforceable only in favor of the insured." At page 766 it was said:

"I have carefully read the policy of insurance sued on in this case, and am convinced that it is a joint contract enforceable only in favor of the survivor of the insured. A similar contract was considered by the Supreme Court of the United States in *Connecticut Mut. Life Ins. Co. v. Schaefer,* 94 U. S. 457, 24 L. Ed. 251 and was held to be joint. The policy designates Mr. and Mrs. Spicer as the insured; they agreed that the policy be made payable to the survivor; the death of one ripened the liability under the policy; they agreed to pay the premiums; and, certainly, both became liable therefor."

In an earlier case, *Equitable Life Assurance Society v. Weightman,* 61 Okla. 106, 160 P. 629, a different conclusion had been reached under similar circumstances, namely, that a resulting trust arose in favor of the decedent's estate. This case was referred to in the opinion

in the Spicer case and its theory rejected as "at war with the proper legal interpretation of the contract of insurance" and inconsistent "with the sound public policy announced by the federal courts in adjudicated cases." Both in the Weightman case and that of *Antrim v. International Life Insurance Co.*, 128 Kan. 65, 275 P. 1084, the word used to connect the names of the spouses was "or," whereas in the Spicer case, supra, and in *O'Boyle v. Home Life Ins. Co. of America*, 20 F. Supp. 33 (Pa.), the word "and" was used. In the case at bar the word "or" is used and appellant urges that we should therefore follow the Weightman and Antrim cases rather than the Spicer case. We are not convinced that the use of the word "or," rather than "and," should be given any controlling effect, for it is by no means conclusive as to the intent of the parties. The O'Boyle case criticizes and distinguishes both the Antrim and Weightman cases.

We agree with the following discussion of the matter by the court below:

"In the O'Boyle case the insured was 'Michael J. O'Boyle *and* Jennie A. O'Boyle.' The use of 'and' is the distinguishing point on which the plaintiff rejects its authority. The reasoning of the case would apply with equal force if the policy had been worded as the present one, making the proceeds payable to either Michael J. O'Boyle or Jennie A. O'Boyle. In neither case were death benefits payable to both parties; they were to be paid to either one or the other. The intention of the parties seems to be so clear that if it were necessary we could substitute for the word 'or' the word 'and.' Words may be inserted or substitution made in order to give effect to the known intention of the parties. *Nusbaum v. Hartford Insurance Company*, 276 Pa. 526. There is, however, no necessity for such substitution. The policy clearly indicates that the death benefits were to be paid to the survivor. The husband could not without the consent of his wife change that provision."

Moreover, the appellant evidently considered both signatures essential to the validity of the assignment. In fact, it is recited in the jurat to the assignment that both Samuel and "Anna" Sampson appeared before the subscribing notary public.

Any laxity upon the part of the notary or the representatives of the bank in procuring the execution of the assignment and its acknowledgment cannot be charged to the appellee. Appellant's motion for judgment in its favor notwithstanding the verdict was properly dismissed.

Judgment affirmed.