**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-4040, 09-4124
_____

JAMES D. MEYER

v.

CUNA MUTUAL INSURANCE SOCIETY,
Appellant
_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
_____

(D.C. Civ. Action No. 03-CV-0602)
District Judge: Honorable Joy Flowers Conti
_____

Argued on October 20, 2010
_____

Before: HARDIMAN, GREENAWAY, JR., and
NYGAARD, Circuit Judges

(Opinion Filed:  May 26, 2011)

_____

Roland C. Goss (argued)
Robin M. Sanders
Jorden Burt LLP
1025 Thomas Jefferson Street, N.W.
Suite 400 East
Washington, DC 20007
       *Counsel for Appellant/Cross-Appellee*

Dennis J. Mulvihill
Robb, Leonard & Mulvihill
500 Grant Street
BNY Mellon Center, 23rd Floor
Pittsburgh, PA 15219
     *Counsel for Appellant/Cross-Appellee*

Aaron D. Rihn (argued)
Robert F. Daley
Robert Peirce & Associates
707 Grant Street, Suite 2500
Pittsburgh, PA 15219
     *Counsel for Appellee/Cross-Appellant*

_____

OPINION

_____

GREENAWAY, JR., Circuit Judge,

Appellee and Cross-Appellant James Meyer ("Plaintiff" or "Meyer"), a Union Railroad employee for approximately 31 years, purchased a credit disability insurance policy from Appellant CUNA Mutual Group ("CUNA") in connection with the financing by the URE Federal Credit Union (the "credit union") of an automobile Meyer purchased. The policy would make the car loan payment on Meyer's behalf in the event he was deemed disabled. Following an injury on the job, Meyer received, pursuant to the policy, disability benefits in the form of credit union payments on the loan for his vehicle. After covering Meyer's payments for approximately three years, CUNA notified him that it would not continue to pay his disability benefits. CUNA found that Meyer no longer met the definition of Total Disability, as defined under CUNA's policy.

Meyer filed a complaint in the District Court for the Western District of Pennsylvania on his own behalf and on behalf of a class of similarly situated individuals, each claiming disability insurance benefits that had been initially

2

granted and later denied under credit disability insurance policies that had been purchased from CUNA. The principal claim asserted a breach of contract, pursuant to the credit disability insurance policy.

Both parties filed cross-motions seeking the grant of summary judgment. The crux of the dueling motions involved the definition of Total Disability. The District Court granted Meyer's motion for partial summary judgment and granted in part CUNA's motion for summary judgment. Specifically, the District Court found the definition of the term "Total Disability" ambiguous and therefore construed it in favor of Meyer, the insured.

Before the Court entered its Final Judgment, it asked the parties to submit supplemental briefing on the issues of estoppel, waiver, prejudgment interest, and a claims process related to resolution of the claims. Based on the Court's summary judgment finding that the more inclusive interpretation of total disability prevailed, Meyer argued that CUNA had either waived its right to request medical information from class members to show their respective disability status during the requisite time period because CUNA told them they no longer qualified or should be estopped from doing so in the claims process. He also argued that class members should be awarded prejudgment interest on their claims.

The Court entered a Permanent Injunction and Final Judgment setting up a claims review process for former class members. It rejected Meyer's claims for waiver, estoppel, and prejudgment interest and then decertified the class, pursuant to CUNA's motion for decertification.

CUNA appeals that part of the District Court's grant of summary judgment in favor of Meyer on the interpretation of the definition of "Total Disability" as well as its Permanent Injunction and Final Judgment. On cross-appeal, Meyer argues that the District Court erred in not applying the theory of estoppel or waiver to the class members' claims for

damages and in not awarding prejudgment interest to the class members' benefits.[1]

For the reasons set forth below, we will affirm the District Court's grant of summary judgment with respect to its interpretation of "Total Disability," vacate its Permanent Injunction and Final Judgment, and remand the case for further proceedings consistent with this opinion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### i.  Factual Background

Appellee James Meyer was a brakeman and conductor for Union Railroad for approximately 31 years. On February 24, 1999, Meyer purchased credit disability insurance, pursuant to a group policy issued by CUNA to the credit union, in connection with his automobile loan. The policy provided that if Meyer became totally disabled, CUNA would make payments to the credit union covering Meyer's outstanding debt on his car loan. The policy's definition of "Total Disability" provided:

> during the first 12 consecutive months of disability means that a member is not able to perform substantially all of the duties of his occupation on the date his disability commenced because of a medically determined sickness or accidental bodily injury. After the first 12 consecutive months of disability, the definition changes and requires the member to be unable to perform any of the duties of his occupation or any occupation for which he is reasonably qualified by education, training or experience.

(App. at 39.)  As required by Pennsylvania law, the policy was approved by the Pennsylvania Insurance Department.

_____

[1] Meyer does not appeal the remainder of the District Court's grant of summary judgment in favor of CUNA.

4

Diane Konz ("Konz"), a CUNA employee, worked with a team of employees at CUNA to draft and submit insurance contracts to state regulators. The drafting team included the manager of claims, the manager of underwriting, the manager of accounting, and an actuary. Konz testified, during her deposition, that she drafted the policy language at issue during CUNA's efforts to modify policies to include plain language.

On May 27, 2000, Meyer suffered a work place injury and filed a claim for disability benefits under his CUNA policy. In response to the claim, CUNA awarded Meyer benefits for the period of July 7, 2000 to July 7, 2001, pursuant to the definition of "Total Disability," that governed the first 12 months of disability. CUNA found that Meyer was totally disabled according to the policy for that time period. CUNA continued to pay Meyer benefits from July 8, 2001 through November 24, 2002, as it found that Meyer was covered according to the definition regarding the post-12 month period.

Meyer visited his doctor, Dr. Antoin Munirji, on a monthly basis during this period, who provided CUNA with medical information about Meyer. Pursuant to the policy's eligibility requirements, Meyer's physicians, including Munirji, regularly provided CUNA with updates regarding Meyer's disability status. On several occasions, Meyer's physicians certified to CUNA that he was capable of returning to work in a sedentary, light, or medium duty capacity, which Meyer does not dispute.

On January 27, 2003, CUNA notified Plaintiff that it was terminating his benefits based on information received from his physicians that Meyer could return to work in some capacity. CUNA determined that Meyer was therefore no longer totally disabled as defined in the post-12 month period. CUNA sent Meyer a form letter which stated that "the information obtained indicated [he was] capable of modified light duty work." (App. at 41.) That, "along with other information contained in [his] file," indicated that he was "no longer unable to perform any occupation." (Id.)

Although Meyer was authorized by several physicians to return to work in some capacity subject to light or medium duty restrictions, he was never cleared by any physician to return to his time-of-injury occupation as a conductor/brakeman at Union Railroad.

### ii. Procedural Background

Subsequent to CUNA's termination of his benefits, Meyer brought an action in the United States District Court for the Western District of Pennsylvania on behalf of himself and similarly situated individuals who were granted, and later denied, benefits (that is, disability payments on loan debt) under credit disability insurance policies they obtained from CUNA, pursuant to its definition of "Total Disability."

In his amended complaint, Meyer sought certification of a nationwide class based on claims for breach of contract, breach of fiduciary duty, violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 PA. CONS. STAT. ANN. § 201-1, *et seq.* ("UTPCPL"), violation of Pennsylvania's bad faith insurance statute, 42 PA. CONS. STAT. ANN. § 8371 ("Section 8371"), and breach of Pennsylvania's common law covenant of good faith and fair dealing.

Before the District Court, Meyer argued that the policy definition of "Total Disability" was unambiguous and should be interpreted to mean that after the first 12 consecutive months, the insured qualifies as totally disabled if he can show either (1) that he is unable to perform the duties of his occupation; or (2) that he is unable to perform the duties of any occupation for which he is reasonably qualified by education, training, or experience. CUNA submitted that the language in the policy created a shift from an "own occupation" definition of disability to an "any occupation" definition after 12 months and that the clause was unambiguous. It argued that for coverage, a claimant must not be able to perform his duties and any of the duties of a job for which he was qualified.

On December 16, 2004, the Court held a class certification hearing. CUNA also filed a motion to dismiss

Meyer's amended complaint which, on December 20, 2004, the District Court granted as to the breach of fiduciary duty claim, granted, in part, as to the unfair trade practices claim, and denied, without prejudice, as to the breach of implied covenant of good faith and fair dealing claim. On January 25, 2006, the Court granted plaintiff's motion for class certification under Federal Rule of Civil Procedure 23(b)(3) for the following class of plaintiffs:[2]

> All persons who purchased disability insurance issued in Pennsylvania from the defendant CUNA Mutual Group, or its subsidiaries, which policies contain the definition of total disability including the following material language: 'After the first twelve consecutive months of disability, the definition changes and requires the Member to be unable to perform any of the duties of his occupation, or any occupation for which he is reasonably qualified', [sic] to the extent that such individuals were determined by the defendant to be not able to perform all of the duties of his or her occupation, but were determined by the defendant to be capable of sufficient physical activity that the defendant decided that they were no longer eligible for total benefits under the defendant's interpretation of the subject policy.

(App. at 38.)

On February 5 and 6, 2007, the parties filed cross-motions for summary judgment. Meyer moved for partial summary judgment on the District Court's interpretation of the "Total Disability" definition of the insurance contract.

---

[2] For class notice purposes, CUNA determined that 4,734 persons had received the benefit denial letter in question and potentially fell within the class definition; however, at the April 14, 2009 status conference before the District Court, Meyer's counsel stated that just under 3,000 claims members remained.

7

CUNA moved for summary judgment regarding all of Meyer's claims.

On September 28, 2007, the District Court issued its summary judgment opinion granting Meyer's motion for partial summary judgment and resolving the policy definition of "Total Disability," finding that it was ambiguous because both Meyer's and CUNA's proffered interpretations were reasonable;[3] it therefore construed the definition in Meyer's favor. In so finding, the District Court stated that any claimant who met the "own occupation" standard of the second clause (and could not perform the duties of his pre-injury occupation duties after 12 months) would "be totally disabled within the meaning of the policy." (App. at 55.)

The District Court also granted in part, and denied in part, CUNA's motion for summary judgment. It granted the motion regarding Meyer's unfair trade practices claim, breach of good faith and fair dealing claim, and violation of bad faith insurance statute claim. For Meyer's bad faith insurance claim, the Court reiterated that it found CUNA's interpretation of the "Total Disability" definition was reasonable, even more so, than Meyer's, and that Meyer produced no evidence of a dishonest purpose or ill will on CUNA's part that would constitute bad faith under the relevant Pennsylvania statute.

The District Court also denied CUNA's motion with respect to count two—breach of contract—finding that because it had granted Meyer's motion for summary judgment on contract interpretation, CUNA was "liable for breaching the contract for terminating the benefits of any class member who could not return to his time of injury job." (App. at 55.) The District Court noted, however, that there was "sufficient evidence of record to create a material

---

[3] In fact, based on its analysis on summary judgment, the District Court agreed with CUNA that its interpretation of "Total Disability" was more reasonable than Meyer's, however, it recognized that where an ambiguity exists in an insurance contract in Pennsylvania. It must be construed in favor of the insured. (App. at 54.)

question of fact . . . as to the remaining issues under the breach of contract claim, namely (1) which of the potential members is actually a member of the class, and (2) what are the damages for each class member." (Id.)

Following its summary judgment ruling, the District Court noted that the only remaining issue to be resolved was CUNA's potential liability for breach of contract. CUNA then filed a motion to decertify the class based on its argument that the damages issue would require detailed, individual inquiries that were not appropriate for class action treatment.

The District Court allowed briefing from both parties on the subject of a claims process. The District Court held hearings on the matter on July 27, 2009 and September 14, 2009, where it considered numerous aspects of efficiency, including fairness to the class members.

On September 21, 2009, following the hearings, the District Court entered a Permanent Injunction and Final Judgment. The District Court found that in light of its interpretation of the policy provision on summary judgment, "there remain[ed] triable issues of fact regarding only Defendant's potential liability for breach of contract." (Id. at 3-4.) The District Court "reserve[d] jurisdiction and discretion to take such further action as may be necessary or appropriate to implement, enforce, or modify the provisions of th[e] Order for a period of two (2) years after the date of entry of th[e] Order." (Id. at 3, ¶ 1.)

The District Court also laid out an extensive claims process. It required CUNA to process completed claim forms in accordance with a timeline and guidelines laid out by the District Court using the District Court's interpretation of "Total Disability." If CUNA chose to dispute a claim, claimants could notify CUNA and appeal to the District Court Judge. The District Court noted that it "[t]hereby retain[ed] jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Injunction and this Final Judgment, including, without limitation, the provisions of Part II of this Final Judgment and Order." (Id. at 6.)

9

Anticipating its immediate ruling on the decertification of the class that day, the Court acknowledged that the remaining issues in the case did not satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) for class certification, and that it "[would] be entering an Order granting CUNA Mutual's Motion to Decertify the Class." (Id. at 4.) That same day, in a separate order, the District Court decertified the class subsequent to its Permanent Injunction and Final Judgment.[4] See Id. at 660. In its Final Judgment, the District Court found that "the remaining issues to be adjudicated d[id] not satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) for class certification," and so it would be entering an order granting CUNA's motion to decertify the class. (Id. at 4.)[5]

On October 16, 2009, CUNA appealed the District Court's judgment. On November 3, 2009, the District Court granted CUNA's motion to stay the Permanent Injunction and Final Judgment pending the outcome of the instant appeal. CUNA appeals the District Court's summary judgment ruling with respect to its interpretation of "Total Disability," and the District Court's Permanent Injunction and Final Judgment. Meyer filed a Cross-Appeal seeking review of the District Court's decision not to apply the doctrines of estoppel or waiver to the class members' claims and to deny claimants prejudgment interest with respect to their claims.

---

[4] CUNA asserts that the District Court abused its discretion in its initial class certification of Meyer's claims based on the same argument against the permanent injunction—that the individualized analyses into the circumstances of each class members' disability claims destroys the typicality, predominance, and superiority requirements of Rules 23(a) and 23(b)(2). To the extent that CUNA attempts to contest the District Court's initial certification, that issue has already been decided by the District Court, and is not before us on appeal.

[5] As Meyer did not seek review of the class decertification, the appeal comes before us decertified, which means that all putative class members now have to assert their claims individually.

## II. JURISDICTION AND STANDARDS OF REVIEW

The District Court had jurisdiction over this matter based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a). We have jurisdiction over this matter, pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. See Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 580 (3d Cir. 2009). Summary judgment is appropriate "if, drawing all inferences in favor of the nonmoving party, 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Id. at 581 (quoting Fed. R. Civ. P. 56(c)).

We review a district court's grant of a permanent injunction for abuse of discretion. United States v. Bell, 414 F.3d 474, 478 (3d Cir. 2005). Our review of a district court's award of equitable relief, like estoppel or waiver, is also for abuse of discretion. James v. Richman, 547 F.3d 214, 217 (3d Cir. 2008). The court's decision to award prejudgment interest in an action based on diversity of citizenship is a question of state law. See Jarvis v. Johnson, 668 F.2d 749, 741 (3d Cir. 1982). We review a district court's interpretation of Pennsylvania law de novo. See Staff Builders Of Philadelphia, Inc. v. Koschitzki, 989 F.2d 692, 694 (3d Cir. 1993).

## III. ANALYSIS

### A. Interpretation of "Total Disability" Definition in Summary Judgment Ruling

The parties do not dispute that Pennsylvania law applies in this diversity matter. Under Pennsylvania law, an insurance contract is governed by the law of the state in which the contract was made. Crawford v. Manhattan Life Ins. Co. of New York, 221 A.2d 877 (Pa. Super. Ct. 1966). "The interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006) (citing Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal

quotation marks omitted)). The goal of that task is "to ascertain the intent of the parties as manifested by the language of the written instrument." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004) (citing Standard Venetian Blind Co. v Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983) (internal quotation marks omitted)).

The policy definition of "Total Disability" provides:

> during the first 12 consecutive months of disability means that a member is not able to perform substantially all of the duties of his occupation on the date his disability commenced because of a medically determined sickness or accidental bodily injury. After the first 12 consecutive months of disability, the definition changes and requires the member to be unable to perform any of the duties of his occupation or any occupation for which he is reasonably qualified by education, training or experience.

(App. at 39.) Meyer contends, as he did before the District Court, that this language is unambiguous and means that after the first 12 consecutive months, the insured qualifies as totally disabled if he can show either (1) that he is unable to perform the duties of his occupation; or (2) that he is unable to perform the duties of any occupation for which he is reasonably qualified by education, training, or experience.

CUNA argues that the clause should not be interpreted that way because the policy creates a shift from an "own occupation" definition of disability to an "any occupation" definition after 12 months. In effect, in the phrase, "or any occupation for which he is reasonably qualified by education, training or experience," the "or" should be read conjunctively as, "and."

Applying Pennsylvania law, the District Court found that the definition of "Total Disability" was ambiguous. Although the Court found CUNA's interpretation of "Total Disability" more reasonable than Meyer's, it noted that its role was not to pick the most reasonable interpretation, but,

12

where two reasonable interpretations creating an ambiguity exist, to choose the interpretation favoring the insured. Taken in the context of the overall policy and applying the plain meaning of "words and phrases," it found Meyer's interpretation reasonable, since the ordinary meaning of "or" suggested a choice between two alternatives. (Id. at 54.)

CUNA claims that the District Court erred in concluding that Meyer's interpretation was reasonable and further argues that there was no evidence in the record of Meyer's intent to enter the insurance contract under that definition. CUNA also argues that adoption of Meyer's interpretation is unreasonable because it allegedly violates Pennsylvania law, including its rules of insurance policy construction and applicable regulations governing credit disability insurance coverage.

After examining the parties' conflicting interpretations, relevant case law, the policy's language and purpose as a whole, and Pennsylvania principles of contract construction, we conclude, as did the District Court, that the definition of Total Disability is ambiguous and must be construed in favor of Meyer, the insured.

The rules of analysis of insurance policies in Pennsylvania are well established. Regents, 458 F.3d at 171 (citing E. Associated Coal Corp. v. Aetna Cas. & Sur. Co., 632 F.2d 1068, 1075 (3d Cir. 1980)). The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties. It begins with the language of the policy. See Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). A policy must be read as a whole and its meaning construed according to its plain language. Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006).

The burden of drafting with precision rests with the insurance company, the author of the policy. Pilosi, 393 F.3d at 365. An ambiguity in contract language exists "when the questionable term or language, viewed in the context of the entire policy, is 'reasonably susceptible of different

13

constructions and capable of being understood in more than one sense.'" Id. at 363 (quoting Med. Protective, 198 F.3d at 103); see also Madison Constr., 735 A.2d at 100. Where a term is ambiguous, it is to be construed against the insurer, in favor of the insured. McMillan v. State Mut. Life Assur. Co. of Am., 922 F.2d 1073, 1075 (3d Cir. 1990) (citing Standard Venetian Blind, 469 A.2d at 566). "The policy rationale underlying strict application of the doctrine is that because most insurance agreements are drafted by the insurance industry, they are essentially contracts of adhesion." Pittson Co. Ultramar Am. Ltd. v. Allianz Ins. Co., 124 F.3d 508, 520 (3d Cir. 1997) (applying New Jersey law).

"Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." Madison Constr., 735 A.2d at 106. Courts should not distort the meaning of the language or strain to find an ambiguity. Id.; Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985). A contract is not rendered ambiguous merely because the parties disagree about its construction. Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 885 (Pa. Super. Ct. 2000).

The instant case is not the typical one where a technical term appearing in a policy is undefined within the policy. In this case, the actual policy term in dispute, "Total Disability," is defined in the policy; however, the language in that definition itself is at issue. Specifically, CUNA's use of the word "or" in the second clause of the post-12 month definition must be subject to scrutiny to edify the definition of "Total Disability."

The Supreme Court of Pennsylvania has not interpreted "or" in this particular context. "In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue." Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir. 2004). In so doing, "'we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue,' as well as to 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending

14

convincingly to show how the highest court in the state would decide the issue at hand.'" Spence v. ESAB Group, Inc., 623 F.3d 212, 216-17 (3d Cir. 2010) (quoting Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 92 (3d Cir. 2008)).

Looking first to the plain language of the definition, we note that in Pennsylvania, when words of common usage are used in an insurance policy, they should be construed in their natural, plain and ordinary sense. Madison Constr., 735 A.2d at 108 (citing Easton v. Washington Cnty. Ins. Co., 137 A.2d 332, 335 (Pa. 1957)).

The court may also look to the dictionary definition. Genaeya Corp v. Harco Nat'l Ins. Co., 991 A.2d 342, 347 (Pa. Super. Ct. 2010) (citing Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007)). Merriam Webster's Eleventh Collegiate Dictionary (2005) defines "or" as "—used as a function word to indicate an alternative." Pennsylvania's intermediate appellate court has made a similar finding. See Frenchak v. Sunbeam Coal Corp., 495 A.2d 1385, 1387 (Pa. Super. Ct. 1985) (interpreting a lease and noting that "[t]he pertinent dictionary definition of 'or' is 'choice between alternative things, states, or courses.'") (citations omitted).

In the statutory interpretation context, the Pennsylvania Supreme Court has also held that "[t]he word 'or' is defined as a conjunction used to connect words, phrases, or clauses representing alternatives." In re Paulmier, 937 A.2d 364, 373 (Pa. 2007) (internal quotation marks omitted).[6] Though this definition appears in the context of

---

[6] In a New Jersey class action insurance contract dispute, we found that in the provision of a local controversy requirement, which required that "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed," the plaintiff's argument that "the disjunctive" or should be interpreted as a "conjunctive" "and" was unavailing. We affirmed the District Court's finding that the plaintiff's interpretation was "at odds with the plain language

15

the court's statutory interpretation, we find it instructive. The commonly used and understood definition of "or" suggests an alternative between two or more choices.

CUNA points to a 1942 Pennsylvania Superior Court case, Kensington Nat'l Bank of Philadelphia v. Sampson, 26 A.2d 115 (Pa. Super. Ct. 1942), to support its proposition that "and" can be substituted for "or" depending on the context of the language involved. We find Kensington distinguishable and unpersuasive. It involved a life insurance policy which insured the lives of a husband and wife and provided for payment to the survivor upon either spouse's death. The superior court affirmed the trial court's finding that "the whole essence of the contract," called a "joint policy," and whose premium was payable during the "joint lifetime" of the insured, "was to give to one benefits upon the death of the other. To allow one person to change it destroys the whole plan of insurance and clearly the intention of the parties."[7] Id. at 117-18. Although the context of that policy required a conjunctive reading, we do not find such obvious intent in the context of this case; one is certainly not *required* to read the clause conjunctively, and in that sense, do not find that Meyer's disjunctive reading is unreasonable.

Our conclusion that Meyer's disjunctive interpretation of "or" is reasonable is further supported by the fact that we may consider "whether alternative or more precise language, if used, would have put the matter beyond reasonable question" in resolving ambiguity. [8] Vlastos v. Sumitomo

of the provision." Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 158 (3d Cir. 2009).

[7] Alternatively, CUNA cites to cases from other circuits interpreting federal or state law outside of Pennsylvania, which are not controlling, that interpret the definition of "or" in a dissimilar context. These references are likewise unpersuasive in showing that Meyer's interpretation is unreasonable.

[8] Curiously, CUNA refers to its "*intended* use of the word 'or' in the 'total disability' definition." (Appellant's Reply Br. at 21) (emphasis added). We frankly cannot reconcile this

16

Marine & Fire Ins. Co. (Europe) Ltd., 707 F.2d 775, 778 (3d Cir. 1983) (citing Celley v. Mut. Benefit Health and Accident Ass'n, 324 A.2d 430, 434 (Pa. Super. Ct. 1974) (internal quotation marks omitted)).  Here, if CUNA had used the word "and" instead of "or" to convey that it indeed intended a conjunctive meaning in the second clause of the definition, it would have put the matter "beyond reasonable question" in resolving ambiguity.[9]

CUNA advances numerous arguments about why Meyer's interpretation, the interpretation ultimately adopted by the District Court, is unreasonable.  Based on our analysis of a plain reading of the language and common, disjunctive meaning of the word "or," we find that Meyer's interpretation is not unreasonable.

Regarding CUNA's next argument that Meyer's interpretation is unreasonable as repugnant to Pennsylvania law, we recognize that in Pennsylvania, "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws."  Pennsylvania Nat'l Mut. Cas. Co. v. Black, 916 A.2d 569, 579 (Pa. 2007) (citing Prudential Prop. and Cas. Ins. Co. v. Colbert, 813 A.2d 747, 751 (Pa. 2002) (internal citations omitted)).

---

position, given the common disjunctive meaning of "or," with CUNA's proffered interpretation—a conjunctive meaning.

[9] We also note that CUNA, in its form letter to Meyer informing him that it would no longer pay his benefits, stated that according to his credit disability insurance contract definition of Total Disability, "[a]fter the initial 12 consecutive months of disability, the definition changes and states that you must be disabled from performing any occupation for which you are reasonably qualified by education, training, or experience," which does not include the "any duties of his occupation or" part of the clause listed in Meyer's policy definition.  (App. at 41.)

17

CUNA argues that 31 Pa. Code § 73.11(4) (1971), a Pennsylvania Department of Insurance regulation in place at the time the policy was drafted, mandates a shift for coverage after 12 months from an own occupation standard to an any occupation standard for disability insurers who charge prima facie rates.[10]

The regulation provided, in relevant part:

The following premium rate standards are applicable to policies providing credit accident and health coverage which are issued with or without evidence of insurability offered to all debtors and containing:

\*\*\*

(4) No definition of disability which defines disability during the first 12 months of disability as inability to perform any occupation. The definition of disability during such time period must be related to the occupation of the borrower at the time such disability occurs. Thereafter, disability will be defined as the inability to perform any gainful occupation for which the borrower is reasonably fitted by education, training and experience.

31 PA. CODE § 73.11(4) (1971). The District Court found that the regulation was a list of attributes in a credit insurance contract for the policy to qualify for "premium rate standards."[11] We agree with the District Court's assessment.

---

[10] The District Court acknowledged that what was referred to as "premium rate standards" in 1971 are now referred to as "prima facie rates" under 31 PA. CODE § 73.107(b). CUNA does not dispute this finding on appeal, and we use the terms here interchangeably, presuming in CUNA's favor that it was charging these rates at the time of Meyer's purchase.

[11] The District Court noted that 31 PA. CODE § 73.11(4) (1971) was amended in 1998 as 31 PA. CODE § 73.107(a)(5) (1998). It concluded that the latter regulation, in place at the

The statute lists the requirements for an insurer that wishes to charge prima facie rates; however, the statute does not indicate that the insurer is required to charge prima facie rates.

CUNA argues that record evidence supports charging prima facie rates for its group credit disability insurance coverage. Assuming this is the custom and practice in the industry, CUNA has not presented evidence that under Pennsylvania law, it is required to charge prima facie rates and therefore required to utilize an "own" to "any" occupation shift in its definition of Total Disability. Notwithstanding that this evidence may otherwise support CUNA's proffered intent and its reasonableness, it is not evidence of Meyer's intent.

Furthermore, under Pennsylvania law, in close cases, a court should resolve the meaning of insurance policy provisions in favor of coverage for the insured. Motley v. State Farm Mut. Auto. Ins. Co., 466 A.2d 609, 611 (Pa. 1983) ("[I]f [a court] should err in determining the meaning of an insurance policy provision . . . , [its] error should be in favor of coverage for the insured."). Additionally, the Pennsylvania Supreme Court has held that "[i]n the insurance setting, a policy of insurance may expand, but cannot reduce,

---

time of Meyer's purchase of insurance in 1999, is concerned with the proof required for disability, and not the definition of Total Disability. Additionally, it noted that the new regulation clearly allows for alternate benefit plans that differ from the features enumerated in section 73.107(a)(1-7).

Thus, the District Court found that the 1998 regulation would apply to Meyer's policy and CUNA's argument that the parties were bound by the terms of the 1971 regulation would be incorrect. Nevertheless, since the 1971 regulation was in effect when some of the class members bought their insurance policies, the District Court analyzed the 1971 regulation to determine if Meyer's interpretation of "Total Disability" was prohibited by law. CUNA does not address this issue in its brief on appeal.

19

coverage that is mandated by statute." Burstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 220 (Pa. 2002).

We also find unpersuasive CUNA's last argument that Meyer's interpretation is unreasonable because it allegedly conflicts with industry custom and practice. CUNA cites to Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co., 579 F.3d 304 (3d Cir. 2009), where we stated that, among other factors in determining ambiguity in an insurance contract, a court may look to industry custom and practice. In that case, a title insurance policy dispute arose between two insurance companies over whether rights of first refusal not explicitly listed were covered by the policy, and we looked to the title insurance industry's treatment of American Land Title Association Endorsements. We found against defendant drafter of the policy, and concluded that along with the text and purpose of the policy, the custom and practice of the title insurance industry also led to the same result. Id. at 311 (finding that the alternate result "r[an] roughshod over the policy's language, purpose, and usage.").

Here, the text of the policy definition does not align with drafter CUNA's evidence of custom and industry practice. The plain language of the provision is not consistent with CUNA's evidence of custom and industry practice. CUNA makes no allegation and presents no evidence of Meyer's awareness of this industry practice or custom. Thus, CUNA's additional evidence, though arguably enlightening regarding its own intent, does not change our belief that Meyer's interpretation, based on the plain language of the provision, is reasonable.

Along this vein, CUNA claims that its interpretation is the only reasonable one because Meyer's proposed interpretation renders half of the definition's terms meaningless by reading out the shift in the policy—that after 12 months, "it changes." "[T]his Court takes care not to render other portions of a provision or contract superfluous when construing contract language." New Castle Cnty., Delaware v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 174 F.3d 338, 349 (3d Cir. 1999) (applying Delaware law) (citing

Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 169 (3d Cir. 1987) (applying Pennsylvania law)).

CUNA's argument, however, is unavailing, by looking at the language of the definition in context. The plain language in the first clause, modifying own occupation, could certainly be read to shift from requiring a claimant to show that he cannot perform "substantially all" of the duties—less than all of those duties—to not being able to perform "any" of the duties. This puts a greater onus on a claimant to meet the threshold for coverage after the first 12 months of disability.

However, we recognize that reading the phrase conjunctively creates an ambiguity if the duties of "any occupation" for which a claimant is reasonably qualified is read as being inclusive of his prior occupation. Looking at the post-12 month clause in the order in which it is written—first to one's abilities with respect to his own occupation—would eliminate a need to continue reading the second part of the clause to determine whether one can perform duties of any occupation, if "any occupation" includes "the duties of one's former occupation."

Under that premise, after 12 months, an insured could be in one of two situations with respect to his own occupation. He could either (1) be able to perform none of the duties of his former occupation; or (2) be able to perform one or some of the duties of his former occupation. If he cannot perform any of the duties of his occupation, construing 'or' disjunctively, he is qualified for coverage, and there is no need to move to the second part of the clause—whether he can perform the duties of any occupation for which he is qualified—to determine coverage. If, on the other hand, an insured can perform one or more tasks of his former occupation, he is not qualified for coverage and there is no need to look to the second part of the clause because he has already failed to qualify for coverage—his own occupation is a subset of any occupation for which he is qualified. Courts should not distort the meaning of the language or strain to find an ambiguity. Madison, 735 A.2d at 106. However, such a reading is not a distortion; it does create some degree

of ambiguity, making the phrase "capable of being understood in more than one sense."

Notwithstanding this potential contextual defect, we will not override our conclusion that Meyer's interpretation of Total Disability is reasonable when the plain language, written by CUNA, offers an otherwise reasonable reading. Cf. New Castle Cnty, 174 F.3d at 350 (3d Cir. 1999) (applying Delaware law) (finding that the potential defect of rendering the word "wrongful" surplusage in an insurance contract in certain contexts would not override the conclusion that the plaintiff's interpretation was reasonable when that defect itself was subject to competing interpretations and only a potential infirmity). However, this reading does lead us to find that the phrase is capable of being understood in more than one sense and that a conjunctive interpretation is also reasonable.[12]

We thus find that the definition of Total Disability is ambiguous as it is capable of being understood in more than one sense. However, as noted earlier, in Pennsylvania, "a court construes ambiguities in an insurance policy strictly against the insurer." USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 198 (3d Cir. 2006) (citing Standard Venetian Blind, 469 A.2d at 566).

Construing the ambiguity against CUNA, we find that Meyer should have been covered after the first twelve months while he could not perform any of the duties of his former occupation. We will affirm the District Court's interpretation.

---

[12] Still, reading the phrase conjunctively leads to other problems in addition to the commonly understood meaning of "or." Reading the phrase conjunctively, one could argue that inclusion of continued coverage if one cannot perform "any of the duties of one's former occupation" is redundant or unnecessary if "duties of any occupation for which one is reasonably qualified" includes one's own occupation.

### B.    District Court's Award of Relief in Permanent Injunction and Final Judgment

CUNA next appeals the District Court's September 21, 2009 Permanent Injunction and Final Judgment.[13] We review a District Court's decision to grant a permanent injunction under an abuse of discretion standard. Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City, 383 F.3d 110, 126 (3d Cir. 2004). "An abuse of discretion exists where the District Court's decision rests upon a clearly erroneous finding of fact, and errant conclusion of law, or an improper application of law to fact." A.C.L.U. of New Jersey v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1476 (3d Cir. 1996) (citation and internal quotation marks omitted). "[W]e will not interfere with the district court's exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Morgan v. Perry, 142 F.3d 670, 683 (3d Cir. 1998) (citing Hanover Potato Products, Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir. 1993) (internal quotation marks omitted)).

CUNA claims that the District Court abused its discretion because the Permanent Injunction awarded impermissibly broad relief on behalf of the former class members. Specifically, CUNA asserts that the District Court's injunction improperly imposed restrictions on CUNA

---

[13] In deciding summary judgment, after finding that any claimant who met the "own occupation" standard or the "any occupation" standard would be totally disabled within the meaning of the policy, the District Court did not address damages or CUNA's liability with respect to each class member because these individualized issues had not yet been litigated. In its Permanent Injunction and Final Judgment, prior to decertifying the class, the District Court noted that subsequent to its summary judgment ruling on the interpretation of the policy provision, "there remain triable issues of fact regarding only Defendant's potential liability for breach of contract." (App. at 3-4.)

in its claims process for policyholders and improperly retained jurisdiction over claims process issues even after the District Court had decertified the class. CUNA further argues that the District Court, after decertifying the class, should have let the former class members pursue individual breach of contract claims, rather than enjoining CUNA from construing the policy definition differently and allowing former class members to pursue their disability benefits through the claims process.[14]

Meyer responds that the District Court still had jurisdiction over the claims of the entire class at the time that it ordered injunctive relief for the class because it decertified the class immediately after. Additionally, Meyer asserts that following the District Court's Final Judgment, no individual issues remained to be resolved because in Meyer's view, the District Court essentially ordered specific performance of the CUNA contract regarding each of the class members.

District courts are afforded considerable discretion in framing injunctions. Ameron, Inc. v. U.S. Army Corps of Engineers, 787 F.2d 875, 887-90, *adopted in part on reh'g by*, 809 F.2d 979 (3d Cir. 1986), *cert. granted*, 485 U.S. 958 (1988), *cert. dismissed*, 488 U.S. 918 (1988) (citing Lemon v. Kurtzman, 411 U.S. 192, 200 (1973)). "Nevertheless, injunctive relief should be no broader than necessary to provide full relief to the aggrieved party." Ameron, 787 F.2d at 888 (citing Califano v. Yamasaki, 442 U.S. 682, 702 (1979)); see Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 765 (1994) (noting that an injunction should be no broader than necessary to achieve its desired goals).

In its Permanent Injunction, the District Court ordered CUNA to follow certain procedures to process the claims forms, including processing the forms in accordance with the

---

[14] CUNA also asserts that the claims adjudication process created by the District Court's Permanent Injunction and Final Judgment adopts proof presumptions that vary from those contained in the forms approved by the Pennsylvania Department of Insurance. Because we find the injunction overbroad for other reasons, we do not reach this argument.

District Court's guidelines and using only the Court's interpretation of "Total Disability." Additionally, the District Court's Permanent Injunction provided that if a claimant opposed the outcome of CUNA's determination, he could file a motion for contempt with the District Court, which, after giving CUNA the opportunity to respond, would then review CUNA's denial of the claim for benefits. If the District Court determined that CUNA improperly denied benefits, it would award prejudgment interest to the claimant from the date of denial.

The District Court reserved for itself jurisdiction over the entire claims process, noting that it "retain[ed] jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Injunction and this Final Judgment." (App. at 6.)

The procedural posture here is seemingly unique and is the source of our concern.[15] We believe the District Court abused its discretion in issuing an injunction in which it retained jurisdiction over the class members' claims throughout the claims procedure process after the class was decertified. We are guided by the principle that "[i]n the absence of a certified class action, [a plaintiff] [i]s only entitled to relief for itself."[16] Ameron, 787 F.2d at 888 (citing Nat'l Ctr. for Immigrant Rights v. INS, 743 F.2d 1365, 1371-72 (9th Cir. 1984); Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974)).

---

[15] At oral argument, counsel for Meyer acknowledged that he was not aware of any decision where a court retained jurisdiction over class members' claims where it subsequently decertified that class.

[16] It is a regular practice for a trial court to retain jurisdiction over the enforcement of a settlement agreement. See, e.g., Williams v. Metzler, 132 F.3d 937, 942 (3d Cir. 1997) ("federal district courts have no inherent authority to enforce a settlement once a final judgment has been entered, but may do so if the agreement expressly retains jurisdiction in the court for enforcement purposes.") (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994)).

Additionally, in the context of an opt-in class, where the district court denied class certification for an action under the Fair Labor Standards Act, we have held that "[a] court which rejects a class as improper has no power to bind class members not properly before it." Lusardi v. Lechner, 855 F.2d 1062, 1079 (3d Cir. 1988). In Lusardi, the district court held that the timely filing of individual charges in an age discrimination lawsuit was necessary to the maintenance of individual actions by opt-in class members at a point in time when the class was not certified. We found that "[t]he power to judge the merits of their individual claims lies with the forum in which those claims are presented. . . [a] district court has no power or jurisdiction to rule on the merits of the claims of individual members of a putative opt-in class when it denies class certification. This is clear legal error." Id.

Others circuits have also found injunctions to be overbroad where their relief amounted to class-wide relief and no class was certified. See, e.g., Sharpe v. Cureton, 319 F.3d 259 (6th Cir. 2003) ("While district courts are not categorically prohibited from granting injunctive relief benefitting an entire class in an *individual suit*, such broad relief is rarely justified because injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (alteration in original) (citing Yamasaki, 442 U.S. at 702); see also Culver v. City of Milwaukee, 277 F.3d 908 (7th Cir. 2002) (suit became an individual action when the class was decertified); Cf. Brown v. Trs. of Boston Univ., 891 F.2d 337, 361 (1st Cir. 1989) ("An injunction should be narrowly tailored to give only the relief to which plaintiffs are entitled. Ordinarily, classwide relief, such as the injunction here which prohibits sex discrimination against the class of Boston University faculty, is appropriate only where there is a properly certified class. . . . But there is no such reason here for an injunction running to the benefit of nonparties.") (citations omitted).

Through its Permanent Injunction, the District Court put in place a process by which class members would be required to present their claims to CUNA, and CUNA would be required to process those claims applying the Court's interpretation of "Total Disability." The injunction also

26

required implementing particular burdens of proof on the claimants, and providing claimants recourse to the same District Court judge in the event that they were not satisfied with the outcome of the claims process, which may result in an award of prejudgment interest. This relief was obviously not limited to Meyer, the only party plaintiff to the suit once the class was decertified. Although the District Court entered the Permanent Injunction and Final Judgment before decertifying the class on the docket,[17] at the point that the class was decertified,[18] the relief was overly broad. Once decertification became effective, the District Court had no jurisdiction over any of the claims of the putative class members and therefore no ability to order that any relief be granted to any claimant other than Meyer.

Here, the claims process set forth and the District Court's assertion of jurisdiction effectively allowed the Court to retain jurisdiction over the claims of former class members despite decertification. In other words, the relief granted in the Permanent Injunction was no longer narrowly tailored. We find that the District Court abused its discretion in awarding overly broad injunctive relief. Even if the District Court had ruled on Meyer's claim, the relief in the form of the injunction would have been overly broad. We will vacate the Permanent Injunction and Final Judgment and remand to the District Court for further action consistent with this opinion.

---

[17] At the September 14, 2009 hearing, the District Court noted that it "ha[d] to do the injunction first and then . . . decertify the class." (App. at 781.)

[18] When it decertified the class, the District Court noted that it did so "because the remaining issues to be adjudicated do not satisfy the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) for class certification." (App. at 4.) Meyer, the class representative, does not appeal the decertification.

### C. Meyer's Claims on Cross-Appeal

#### i. Estoppel, Waiver and Prejudgment Interests

On cross-appeal, Meyer asserts that the District Court erred in failing to apply the theory of estoppel or waiver to the class members' claims for damages in its final judgment. Meyer also claims that the District Court failed to award prejudgment interest to the class members' claims. We need not reach these issues. They are moot given the District Court's decertification of the class because any determination by any court on the class members' behalf would fly in the face of decertification. Additionally, there are no damages to award.

As noted, we will vacate the District Court's Permanent Injunction and Final Judgment requiring CUNA to apply the District Court's interpretation of Total Disability and engage in the District Court-ordered claims process because we find that the Court's retention of jurisdiction taken together with the scope of the injunction awarded overly broad relief to the former class members. Because of our disposition of that issue, we believe it would be premature to decide the issue of prejudgment interest at this time. See, e.g., Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988) (a plaintiff who succeeds on a contract claim is entitled to prejudgment interest). Accordingly, we will vacate the District Court's denial of prejudgment interest.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's ruling on summary judgment interpreting the policy definition in Meyer's favor that a subscriber is entitled to coverage under the benefit policy after 12 months if he can show that he is (1) unable to perform any of the duties of his occupation, or alternatively is able to show that he is (2) unable to perform any of the duties of any occupation for which he is reasonably qualified by education, training or experience. We will also vacate and remand the District Court's order of Permanent Injunction and Final Judgment.