**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-4710 and 11-3447
_____

KENNETH SEGAL;
ADAM SEGAL, as trustee for and on behalf of the
Karen and Kenneth Segal Descendants Trust;
SEGAL AND MOREL, INC.,

v.

STRAUSSER ENTERPRISES, INC.;
GARY STRAUSSER;
LEONARD MELLON,

Leonard Mellon,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:07-cv-04647)
District Judge: Hon. James Knoll Gardner
_____

Submitted under Third Circuit LAR 34.1(a)
June 22, 2012

Before: AMBRO, VANASKIE and ALDISERT, <u>Circuit Judges</u>

(Filed: June 28, 2012)
_____

OPINION OF THE COURT
_____

ALDISERT, <u>Circuit Judge</u>.

This interlocutory appeal from the District Court for the Eastern District of Pennsylvania presents a single question: whether that court exceeded its discretion when, based on Appellant's arguments during arbitration and the principles of equitable estoppel, it denied Appellant Leonard Mellon's motion to compel arbitration. We hold that the District Court acted well within its discretion, and we will affirm its judgment.

## I.

Because we write primarily for the parties, who are familiar with the facts and proceedings in this case, we will revisit them only briefly.

Appellees (collectively, "Segal") entered a real estate deal with Strausser Enterprises, Inc. ("SEI") that contained a mandatory arbitration clause. After the parties entered the contract, SEI believed that one of Segal's impending commercial transactions violated the deal and, through its attorney, Mellon, sued to enjoin Segal's actions in Pennsylvania state court. The Northampton County Court of Common Pleas held that SEI's claims fell under the mandatory arbitration clause and, accordingly, dismissed the suit. SEI unsuccessfully appealed to the Pennsylvania Superior Court.

SEI commenced arbitration against Segal, during which Mellon continued to serve as SEI's lead counsel. In the arbitration, Segal raised its own claims against SEI and Mellon, seeking damages and legal fees stemming from Mellon's allegedly frivolous state court filings and appeals. SEI objected to these claims being arbitrated. In its letter to the Court of Common Pleas advising that the dispute had been submitted to arbitration, for example, SEI contended that the arbitration panel did not have jurisdiction over the issue of Segal's attorneys' fees. See App. 00201. During arbitration, moreover, SEI repeatedly argued to the arbitration panel that the issue of legal fees was not properly subject to arbitration and should be submitted to a court. After some negotiation, Segal

2

agreed to withdraw its fees claims from arbitration and raise them, instead, in court. The parties verbally memorialized this agreement before the arbitration panel, and the panel accepted the withdrawal. See App. 00219.

While the arbitration continued, Segal asserted its fees claims, as promised, in a complaint filed in the District Court for the Eastern District of Pennsylvania on November 5, 2007. The complaint alleged tortious interference with contract, tortious interference with prospective relations, malicious prosecution, and abuse of process, all arising from Mellon's (on SEI's behalf) allegedly improper legal filings aimed at thwarting Segal's impending transaction. The complaint named as defendants SEI, Gary Strausser (SEI's principal), and Mellon.

On January 4, 2008, the defendants filed a motion to dismiss Segal's complaint or, alternatively, to compel arbitration because Segal's claims arose from a contract with a mandatory arbitration clause. In the motion, the defendants conceded that "the claims brought by Plaintiff[s] in the instant matter against SEI and Strausser [and Mellon] . . . were actually first brought by them in arbitration," App. 00226, and "prior to filing Plaintiffs' Complaint, [Segal] sought to assert *the very same claims* in the ongoing arbitration." App. 00233 (emphasis added).

This attempt by the defendants to *return* to arbitration "the very same claims" they had just successfully *removed* from arbitration led Segal to seek sanctions under Rule 11 of the Federal Rules of Civil Procedure. Shortly before the hearing on that sanctions motion, defendants SEI and Strausser withdrew their support from the motion to compel arbitration for "strategic reasons." App. 00375. Mellon, though, pressed on.

The District Court converted Mellon's motion into a motion for summary judgment, incorporated into the record all relevant evidence presented at the sanctions

3

hearing, and, on November 19, 2009, issued an order denying Mellon's motion on the grounds of equitable estoppel. The Court held that Segal's detrimental reliance on SEI's earlier, anti-arbitration arguments equitably estopped Mellon from later adopting the position that the exact same claims should be returned to arbitration. As an aside, the Court noted that Mellon's "fast and loose" tactics would likely run afoul of the doctrine of judicial estoppel as well. App. 00021.

After unsuccessfully moving for reconsideration, Mellon timely appealed both the District Court's original order and its denial of his motion for reconsideration. We have consolidated Mellon's two appeals here.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332. Because this is an interlocutory appeal of the District Court's order refusing a stay under 9 U.S.C. § 3 and arbitration under 9 U.S.C. § 4, we have jurisdiction pursuant to 9 U.S.C. § 16(a)(1).

"We exercise plenary review over questions of law concerning the applicability and scope of arbitration agreements." Nino v. Jewelry Exch., Inc., 609 F.3d 191, 200 (3d Cir. 2010) (quotation and citation omitted). We will reverse a district court's application of equitable estoppel, however, only if it has exceeded its discretion. See Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 162 (3d Cir. 2011); Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir. 1989) ("[W]hen a trial court makes an equitable assessment after the operative facts are established, we review that assessment for abuse of discretion.").[1]

---

[1] Appellant contends that we should review the District Court's application of equitable estoppel under a plenary standard, citing Nino's statement that a court should "exercise plenary review over the District Court's determination of whether [a party], through its litigation conduct, waived its right to compel arbitration." 609 F.3d at 200 (citing Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 215 (3d Cir. 2007)). Appellant misses the mark. The issues of whether a party has waived its right to arbitration, or even whether that party has been *judicially* estopped from taking a contrary position, are distinct from the

4

## III.

We hold that the District Court acted within the bounds of its discretion when it concluded that Segal's detrimental reliance on Mellon's previous anti-arbitration positions justified equitable estoppel.

"[E]quitable estoppel serves to protect litigants from unscrupulous opponents who induce a litigant's reliance on a position, then reverse themselves to argue that they win under the opposite scenario." Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1220 (6th Cir. 1990) (emphasis removed); see Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988) ("[E]quitable estoppel focuses on the relationship between the parties to the prior litigation."(citations omitted)). As the District Court correctly explained, equitably estopping a litigant from taking a self-contradictory position is proper if: (1) the parties (or parties in privity with them) were adverse in a prior proceeding; (2) the party seeking estoppel detrimentally relied on its opponent's prior position; and (3) the party seeking estoppel would be prejudiced if its opponent were allowed to assume a new position. See Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779 n.3 (3d Cir. 2001); Teledyne, 911 F.2d at 1220; Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503 (Pa. 1983) ("[E]quitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity."

After extensively reviewing the record, the District Court found that the evidence satisfied these factors and, accordingly, warranted equitable estoppel. On appeal, Mellon

issue of whether *equitable* estoppel precludes that party from inducing an opponent's reliance on a particular argument and then reversing positions to the opponent's detriment. Because this case concerns the latter, we review for abuse of discretion.

5

repeats his argument that, regardless of any past positions SEI may have taken, the "liberal federal policy favoring arbitration" requires the legal-fees claims to be sent back to arbitration, pursuant to the still-binding arbitration clause. See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011). This outcome requires Mellon to undermine the District Court's invocation of equitable estoppel; thus, he attacks the Court's findings on each of the equitable estoppel factors. Mellon contends that he was not a "party" to the prior proceeding, both because he was absent from the arbitration hearing at which SEI's other counsel objected to arbitrating the legal-fees claims and because he was not a named party in the arbitration. He argues that Segal cannot have detrimentally relied on SEI's positions because any statements that were made about removing the legal-fees claims from arbitration were meant as "mere[] suggestions as to the proper forum" rather than factual representations on which Segal should have relied, Brief for Appellants 24, and because those statements "suggested" merely SEI's wish that such claims be raised in *state* court, but not federal court. And he disputes whether Segal has shown how it will be prejudiced by a return to arbitration. Indeed, Mellon argues, the legal-fees claims were always properly subject to arbitration—SEI's past arguments, notwithstanding. Because the claims Segal raised in federal court are broader than the legal-fees issues discussed in arbitration, moreover, Mellon contends that any anti-arbitration arguments SEI may have made about the earlier, narrower claims cannot have prejudiced Segal.

For all of their bluster, these contentions fail to show how the District Court's decision to apply equitable estoppel constituted an abuse of its discretion. The record reveals ample evidence to support the District Court's finding of each of the equitable estoppel factors. First, although Mellon was not an expressly named "party" to the original arbitration claims and those who were—Strausser and SEI—have withdrawn

6

from the motion to compel arbitration, Mellon is nevertheless a "party" for equitable estoppel purposes. Mellon represented SEI during the arbitration. The District Court correctly concluded that, as SEI's attorney and agent, Mellon is considered to be the same party as SEI while performing his duties within the scope of his representation. See Heffernan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999) ("[T]he mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency." (citation omitted)). Notwithstanding Mellon's contention that he is not a "party" for equitable estoppel purposes, see Brief for Appellants 26, Mellon proudly claims that he is, in fact, "an agent of SEI" for the purposes of invoking SEI's arbitration clause, see id. at 17. Mellon must accept the bitter of agency with the sweet, and may not claim a position as SEI's agent when it serves him and disavow it when it does not.

Second, Segal clearly relied upon SEI's anti-arbitration positions. SEI repeatedly sought to remove the legal-fees issues from arbitration, and Segal agreed to withdraw those claims, expressly acquiescing to SEI's requests. See App. 00219. SEI's concession that the claims brought in District Court were identical to those in arbitration, moreover, lends credence to the District Court's reasonable conclusion that Segal withdrew its claims from arbitration with the mutual understanding that Segal would reassert those claims in court. See App. 00233 ("[P]rior to filing Plaintiffs' Complaint, [Segal] sought to assert *the very same claims* in the ongoing arbitration." (emphasis added)).

Third, this reliance would be both detrimental and prejudicial if Mellon could merely bounce Segal back to arbitration to bring its claims anew after already having borne the costs of raising these issues in arbitration, voluntarily withdrawing them, and then filing and briefing a case in District Court. On this point, Mellon insists that

7

requiring Segal to arbitrate claims that should always have been subject to a mandatory arbitration agreement cannot constitute prejudice. But Mellon's perceived right to arbitrate these claims does not trump the protections that equitable estoppel affords litigants. Indeed, because equitable estoppel is meant to safeguard innocent parties against an opponent's reprehensible behavior, it applies regardless of whatever legitimacy a misbehaving party's estopped claim might have enjoyed *ab initio*. See Teledyne, 911 F.2d at 1220. Based on the extensive evidence at its disposal, the District Court's conclusion that these facts warranted equitable estoppel falls within the bounds of its permissible discretion.

* * * * *

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.