**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-4546, 14-4568, and 14-4569
_____

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,
an unincorporated association; NATIONAL BASKETBALL
ASSOCIATION, a joint venture; NATIONAL FOOTBALL
LEAGUE, an unincorporated association; NATIONAL
HOCKEY LEAGUE, an unincorporated association; OFFICE
OF THE COMMISSIONER OF BASEBALL, an
unincorporated association doing business as MAJOR
LEAGUE BASEBALL

v.

GOVERNOR OF THE STATE OF NEW JERSEY; DAVID
L. REBUCK, Director of the New Jersey Division of Gaming
Enforcement and Assistant Attorney General of the State of
New Jersey; FRANK ZANZUCCKI, Executive Director of
the New Jersey Racing Commission; NEW JERSEY
THOROUGHBRED HORSEMEN'S ASSOCIATION, INC.;
NEW JERSEY SPORTS & EXPOSITION AUTHORITY

STEPHEN M. SWEENEY, President of the New Jersey
Senate; VINCENT PRIETO, Speaker of the New Jersey
General Assembly (Intervenors in District Court),

Appellants in 14-4568

Governor of New Jersey; David L. Rebuck; Frank Zanzuccki,
                              Appellants in 14-4546

New Jersey Thoroughbred Horsemen's Association, Inc.,
                              Appellant in 14-4569

---

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.:  3-14-cv-06450)
District Judge:  Honorable Michael A. Shipp

---

Argued on March 17, 2015

Before:  RENDELL, FUENTES and BARRY, Circuit Judges
(Opinion filed: August 25, 2015)

John J. Hoffman, Esquire
Acting Attorney General of the State of New Jersey
Jeffrey S. Jacobson, Esquire
Geoffrey S. Brounell, Esquire
Stuart M. Feinblatt, Esquire
Ashlea D. Newman, Esquire
Peter M. Slocum, Esquire
Office of Attorney General of New Jersey
25 Market Street
Trenton, NJ   08625

Matthew Hoffman, Esquire
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, CA   90071


Ashley E. Johnson, Esquire
Gibson, Dunn & Crutcher
2100 McKinney Avenue
Suite 1100
Dallas, TX   75201


Theodore B. Olson, Esquire **(ARGUED)**
Matthew D. McGill, Esquire
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
9th Floor
Washington, DC   20036

       Counsel for Appellants Governor of the State of
       New Jersey, David L. Rebuck, and Frank
       Zanzuccki in 14-4546


Elliott M. Berman, Esquire
McElroy, Deutsch, Mulvaney & Carpenter
570 Broad Street
Newark, NJ   07102

Ronald J. Riccio, Esquire **(ARGUED)**
Edward A. Hartnett, Esquire

McElroy, Deutsch, Mulvaney & Carpenter
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

      Counsel for Appellant New Jersey
      Thoroughbred Horsemen's Association, Inc.
      in 14-4569

Michael R. Griffinger, Esquire **(ARGUED)**
Thomas R. Valen, Esquire
Jennifer A. Hradil, Esquire
Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102

      Counsel for Appellants Stephen M. Sweeney
      and Vincent Prieto in 14-4568

Paul D. Clement, Esquire **(ARGUED)**
Erin E. Murphy, Esquire
William R. Levi, Esquire
Taylor Meehan, Esquire
Bancroft PLLC
500 New Jersey Avenue, N.W.
7th Floor
Washington, DC   20001

Jeffrey A. Mishkin, Esquire
Anthony J. Dreyer, Esquire
Skadden, Arps, Slate, Meagher, & Flom

4 Times Square
New York, NY   10036

William J. O'Shaughnessy, Esquire
Richard Hernandez, Esquire
McCarter & English
100 Mulberry Street
Four Gateway Center, 14th Floor
Newark, NJ   07102

       Counsel for Appellees National Collegiate
       Athletic Association; National Basketball
       Association; National Football League;
       National Hockey League; Office of the
       Commissioner of Baseball

Joyce R. Branda, Esquire
Acting Assistant Attorney General, Civil Division
Paul J. Fishman, Esquire
United States Attorney of the District of New Jersey
Scott R. McIntosh, Esquire
Peter J. Phipps, Esquire **(ARGUED)**
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 883
Washington, DC   20044

       Counsel for Amicus United States of America

---

O P I N I O N

---

5

**RENDELL,** Circuit Judge:

The issue presented in this appeal is whether SB 2460, which the New Jersey Legislature enacted in 2014 (the "2014 Law") to partially repeal certain prohibitions on sports gambling, violates federal law. 2014 N.J. Sess. Law Serv. Ch. 62, codified at N.J. Stat. Ann. §§ 5:12A-7 to -9. The District Court held that the 2014 Law violates the Professional and Amateur Sports Protection Act ("PASPA"), 28 U.S.C. §§ 3701-3704. We will affirm. PASPA, by its terms, prohibits states from authorizing by law sports gambling, and the 2014 Law does exactly that.

## I. Background

Congress passed PASPA in 1992 to prohibit state-sanctioned sports gambling. PASPA provides:
It shall be unlawful for—

> (1) a governmental entity to *sponsor, operate, advertise, promote, license, or authorize by law* or compact, or
>
> (2) a person to sponsor, operate, advertise, or promote, pursuant to the law or compact of a governmental entity, a lottery, sweepstakes, or other betting, gambling, or wagering scheme based . . . on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more

> performances of such athletes in such
> games.

28 U.S.C. § 3702 (emphasis added). PASPA defines "governmental entity" to include states and their political subdivisions. 28 U.S.C. § 3701(2). PASPA includes a remedial provision that permits any sports league whose games are or will be the subject of sports gambling to bring an action to enjoin the gambling. 28 U.S.C. § 3703.

Congress included in PASPA exceptions for state-sponsored sports wagering in Nevada and sports lotteries in Oregon and Delaware, and also an exception for New Jersey but only if New Jersey were to enact a sports gambling scheme within one year of PASPA's enactment. 28 U.S.C. § 3704(a). New Jersey did not do so and, thus, the PASPA exception expired. Notably, sports gambling was prohibited in New Jersey for many years by statute and by the New Jersey Constitution. *See, e.g.,* N.J. Const. Art. IV § VII ¶ 2; N.J. Stat. Ann. § 2C:37-2; N.J. Stat. Ann. § 2A:40-1. In 2010, however, the New Jersey Legislature held public hearings on the advisability of allowing sports gambling. These hearings included testimony that sports gambling would generate revenues for New Jersey's struggling casinos and racetracks. In 2011, the Legislature held a referendum asking New Jersey voters whether sports gambling should be permitted, and sixty-four percent voted in favor of amending the New Jersey Constitution to permit sports gambling. The constitutional amendment provided:

> It shall also be lawful for the Legislature
> to authorize by law wagering at casinos
> or gambling houses in Atlantic City on
> the results of any professional, college,

> or amateur sport or athletic event, except that wagering shall not be permitted on a college sport or athletic event that takes place in New Jersey or on a sport or athletic event in which any New Jersey college team participates regardless of where the event takes place . . . .

N.J. Const. Art. IV, § VII, ¶ 2(D). The amendment thus permitted the New Jersey Legislature to "authorize by law" sports wagering at "casinos or gambling houses in Atlantic City," except that wagering was not permitted on New Jersey college teams or on any collegiate event occurring in New Jersey. An additional section of the amendment permitted the Legislature to "authorize by law" sports wagering at "current or former running and harness horse racetracks," subject to the same restrictions regarding New Jersey college teams and collegiate events occurring in New Jersey. N.J. Const. Art. IV, § VII, ¶ 2(F).

After voters approved the sports-wagering constitutional amendment, the New Jersey Legislature enacted the Sports Wagering Act in 2012 ("2012 Law"), which provided for regulated sports wagering at New Jersey's casinos and racetracks. N.J. Stat. Ann. §§ 5:12A-1 *et seq.* (2012). The 2012 Law established a comprehensive regulatory scheme, requiring licenses for operators and individual employees, extensive documentation, minimum cash reserves, and Division of Gaming Enforcement access to security and surveillance systems.

8

Five sports leagues[1] sued to enjoin the 2012 Law as violative of PASPA.[2] The New Jersey Parties did not dispute that the 2012 Law violated PASPA, but urged, instead, that PASPA was unconstitutional under the anti-commandeering doctrine. The District Court held that PASPA was constitutional and enjoined implementation of the 2012 Law.

---

[1] The sports leagues were the National Collegiate Athletic Association ("NCAA"), National Football League ("NFL"), National Basketball Association, National Hockey League, and the Office of the Commissioner of Baseball, doing business as Major League Baseball (collectively, the "Leagues").

[2] The Leagues named as defendants Christopher J. Christie, the Governor of the State of New Jersey; David L. Rebuck, the Director of the New Jersey Division of Gaming Enforcement ("DGE") and Assistant Attorney General of the State of New Jersey; and Frank Zanzuccki, Executive Director of the New Jersey Racing Commission ("NJRC"). The New Jersey Thoroughbred Horsemen's Association, Inc. ("NJTHA") intervened as a defendant, as did Stephen M. Sweeney, President of the New Jersey Senate, and Sheila Y. Oliver, Speaker of the New Jersey General Assembly ("State Legislators"). We collectively refer to these parties as the "New Jersey Parties." In the present case, the New Jersey Parties are the same, with some exceptions. NJTHA was named as a defendant (i.e., it did not intervene), as was the New Jersey Sports and Exposition Authority; the latter is not participating in this appeal. Additionally, Vincent Prieto, not Sheila Y. Oliver, is now the Speaker of the General Assembly.

The New Jersey Parties appealed, and we affirmed in *National Collegiate Athletic Ass'n v. Governor of New Jersey*, 730 F.3d 208 (3d Cir. 2013) (*Christie I*).

*Christie I* rejected the New Jersey Parties' argument that PASPA was unconstitutional. In explaining that PASPA does not commandeer the states' legislative processes, we stated: "[n]othing in [PASPA's] words *requires* that the states keep any law in place. All that is prohibited is the issuance of gambling 'license[s]' or the affirmative 'authoriz[ation] *by law*' of gambling schemes." *Id.* at 232 (alterations in original). The New Jersey Parties had urged that PASPA commandeered the state because it prohibited the repeal of New Jersey's prohibitions on sports gambling; they reasoned that repealing a statute barring an activity would be equivalent to authorizing the activity, and "authorizing" was not allowed by PASPA. We rejected that argument, observing that "PASPA speaks only of 'authorizing *by law*' a sports gambling scheme," and "[w]e [did] not see how having *no law* in place governing sports wagering is the same as authorizing it by law." *Id.* We further emphasized that "the lack of an affirmative prohibition of an activity does not mean it is *affirmatively* authorized by law. The right to do that which is not prohibited derives not from the authority of the state but from the inherent rights of the people." *Id.* In short, we concluded that the New Jersey Parties' argument rested on a "false equivalence between repeal and authorization." *Id.* at 233.

The New Jersey Parties appealed to the United States Supreme Court, which denied certiorari. *Christie I* is now the law of the Circuit: PASPA is constitutional and does not violate the anti-commandeering doctrine.

10

Undeterred, in 2014, the Legislature passed the 2014 Law, SB 2460, which provided in part:

> any rules and regulations that may require or authorize any State agency to license, authorize, permit or otherwise take action to allow any person to engage in the placement or acceptance of any wager on any professional, collegiate, or amateur sport contest or athletic event, or that prohibit participation in or operation of a pool that accepts such wagers, are repealed to the extent they apply or may be construed to apply at a casino or gambling house operating in this State in Atlantic City or a running or harness horse racetrack in this State, to the placement and acceptance of wagers on professional, collegiate, or amateur sport contests or athletic events . . . .

N.J. Stat. Ann. § 5:12A-7. The 2014 Law specifically prohibited wagering on New Jersey college teams' competitions and on any collegiate competition occurring in New Jersey, and it limited sports wagering to "persons 21 years of age or older situated at such location[s]," namely casinos and racetracks. *Id.*

## II.  Procedural History and Parties' Arguments

The Leagues filed suit to enjoin the New Jersey Parties from giving effect to the 2014 Law. The District Court held that the 2014 Law violates PASPA, granted summary

11

judgment in favor of the Leagues and issued a permanent injunction against the Governor of New Jersey, the Director of the New Jersey Division of Gaming Enforcement, and the Executive Director of the New Jersey Racing Commission (collectively, the "New Jersey Enjoined Parties").[3] The

<hr />

[3] In the District Court, the New Jersey Enjoined Parties urged that the Eleventh Amendment gave them immunity such that they could not be sued in an action challenging the 2014 Law. The District Court rejected this argument, as do we, and we note that, while the issue was briefed, the New Jersey Enjoined Parties did not press—or even mention—this issue at oral argument. They contend that, because the 2014 Law is a self-executing repeal that requires no action from them or any other state official, they are immune from suit. This argument fails. The New Jersey Enjoined Parties are subject to suit under the *Ex parte Young* exception to Eleventh Amendment immunity, which "permit[s] the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (quoting *Ex parte Young,* 209 U.S. 123, 160 (1908)). The New Jersey Enjoined Parties are not arguing that other state officials should have been named instead of them; they are arguing that *no* state official can be sued regarding the 2014 Law. We disagree. The Leagues named the state officials who are most closely connected to the 2014 Law, i.e., the Governor, the Director of the DGE, and the Executive Director of the NJRC. The Leagues did not name officials who bear no connection whatsoever to the 2014 Law. *See Young*, 209 U.S. at 156 (explaining that plaintiffs cannot name just any state official, such as a "state superintendent of schools" simply "to test the constitutionality" of a law). *See*

District Court interpreted *Christie I* as holding that PASPA offers two choices to states: maintaining prohibitions on sports gambling or completely repealing them. It reasoned that PASPA preempts the 2014 Law because the 2014 Law is a partial repeal that necessarily results in sports wagering with the State's imprimatur. The New Jersey Parties appealed.

On appeal, the New Jersey Parties argue that the 2014 Law complies with PASPA and is consistent with *Christie I* because the New Jersey Legislature effected a repealer as *Christie I* specifically permitted. The NJTHA argues that the District Court erred in granting injunctive relief to the Leagues because the Leagues have unclean hands from supporting sports gambling in other contexts, and that any injunctive relief should be limited to the Leagues' games and should not include games of entities who are not parties to this action.

The Leagues urge that the 2014 Law violates PASPA because it "authorizes" and "licenses" sports gambling. The United States submitted an amicus brief in support of the Leagues arguing that the 2014 Law impermissibly "licenses" sports wagering by confining the repeal of gambling prohibitions to licensed gambling facilities and thus, in effect, enlarging the terms of existing gaming licenses.

---

*also Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (noting that a suit against the governor would be appropriate when challenging a "self-enforcing statute" because "[t]he plaintiff would have been barred from challenging the statute by the eleventh amendment unless it could name the Governor as a defendant").

13

We conclude that the District Court did not err in striking down the 2014 Law.

### III. <u>Analysis</u>[4]

#### A. <u>The 2014 Law Violates PASPA</u>

As a preliminary matter, we acknowledge New Jersey's salutary purpose in attempting to legalize sports gambling to revive its troubled casino and racetrack industries. The New Jersey Assembly Gaming and Tourism Committee chairman stated, in regards to the 2014 Law, that "[w]e want to give the racetracks a shot in the arm. We want to help Atlantic City. We want to do something for the gaming business in the state of New Jersey, which has been under tremendous duress . . . ." (App. 91.) New Jersey State Senator Ray Lesniak, a sponsor of the law, has likewise stated that "[s]ports betting will be a lifeline to the casinos, putting people to work and generating economic activity in a growth industry." (App. 94.) And New Jersey State Senator Joseph Kyrillos stated that "New Jersey's continued prohibition on sports betting at our casinos and racetracks is contrary to our interest of supporting employers that provide tens of thousands of jobs and add billions to our state's economy" and that "[s]ports betting will help set New Jersey's wagering facilities apart from the competition and strengthen

---

[4] "We review a district court's grant of summary judgment *de novo* . . . ." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). "We review a district court's grant of a permanent injunction for abuse of discretion." *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 162 (3d Cir. 2011).

14

Monmouth Park and our struggling casino industry." (App. 138.) PASPA has clearly stymied New Jersey's attempts to revive its casinos and racetracks and provide jobs for its workforce.

Moreover, PASPA is not without its critics, even aside from its economic impact. It has been criticized for prohibiting an activity, i.e., sports gambling, that its critics view as neither immoral nor dangerous. It has also been criticized for encouraging the spread of illegal sports gambling and for making it easier to fix games, since it precludes the transparency that accompanies legal activities.[5] Simply put, "[w]e are cognizant that certain questions related to this case—whether gambling on sporting events is harmful to the games' integrity and whether states should be permitted to license and profit from the activity—engender strong views." *Christie I,* 730 F.3d at 215. While PASPA's provisions and its reach are controversial and, some might say, unwise, "we are not asked to judge the wisdom of PASPA" and "[i]t is not our place to usurp Congress' role simply because PASPA may have become an unpopular law." *Id.* at 215, 241. We echo *Christie I* in noting that "New Jersey and any other state that may wish to legalize gambling

---

[5] It has also been criticized as unconstitutional, but we held otherwise in *Christie I* and we cannot and will not revisit that determination here. *See Christie I*, 730 F.3d at 240 ("[N]othing in PASPA violates the U.S. Constitution. The law neither exceeds Congress' enumerated powers nor violates any principle of federalism implicit in the Tenth Amendment or anywhere else in our Constitutional structure.").

15

on sports . . . are not left without redress. Just as PASPA once gave New Jersey preferential treatment in the context of gambling on sports, Congress may again choose to do so or . . . may choose to undo PASPA altogether." *Id.* at 240-41. Unless or until that happens, however, we are duty-bound to interpret the text of the law as Congress wrote it.

We now turn to the primary question before us: whether the 2014 Law violates PASPA. We hold that it does. Under PASPA, it shall be unlawful for "a governmental entity to sponsor, operate, advertise, promote, license, or authorize by law or compact" sports gambling. 28 U.S.C. § 3702(1). We conclude that the 2014 Law violates PASPA because it authorizes by law sports gambling.

First, the 2014 Law authorizes casinos and racetracks to operate sports gambling while other laws prohibit sports gambling by all other entities. Without the 2014 Law, the sports gambling prohibitions would apply to casinos and racetracks. Appellants urge that the 2014 Law does not provide authority for sports gambling because we previously held that "[t]he right to do that which is not prohibited derives not from the authority of the state but from the inherent rights of the people" and that "[w]e do not see how having *no law* in place governing sports wagering is the same as authorizing it by law." *Christie I*, 730 F.3d at 232. But this is not a situation where there are *no* laws governing sports gambling in New Jersey. Absent the 2014 Law, New Jersey's myriad laws prohibiting sports gambling would apply to the casinos and racetracks. Thus, the 2014 Law provides the authorization for conduct that is otherwise clearly and completely legally prohibited.

16

Second, the 2014 Law authorizes sports gambling by selectively dictating where sports gambling may occur, who may place bets in such gambling, and which athletic contests are permissible subjects for such gambling. Under the 2014 Law, New Jersey's sports gambling prohibitions are specifically removed from casinos, gambling houses, and horse racetracks as long as the bettors are people age 21 or over, and as long as there are no bets on either New Jersey college teams or collegiate competitions occurring in New Jersey. The word "authorize" means, inter alia, "[t]o empower; to give a right or authority to act," or "[t]o permit a thing to be done in the future." Black's Law Dictionary 133 (6th ed. 1990).[6] The 2014 Law allows casinos and racetracks and their patrons to engage, under enumerated circumstances, in conduct that other businesses and their patrons cannot do. That selectiveness constitutes specific permission and empowerment.

Appellants place much stock in our statement in *Christie I* that their argument there rested on a "false equivalence between repeal and authorization." 730 F.3d at 233. They claim that the 2014 Law does not authorize sports gambling because it is only a "repeal" and, in *Christie I*, we stated that "the lack of an affirmative prohibition of an activity does not mean it is *affirmatively* authorized by law." *Id.* at 232. In other words, they argue that, because the 2014 Law is only a repeal removing prohibitions against sports gambling, it is not an "affirmative authorization" under *Christie I*. We agree that, had the 2014 Law repealed all

---

[6] We cite the version of Black's Law Dictionary that was in effect in 1992, the year PASPA was passed.

17

prohibitions on sports gambling, we would be hard-pressed, given *Christie I*, to find an "authorizing by law" in violation of PASPA.  But that is not what occurred here.  The presence of the word "repeal" does not prevent us from examining what the provision actually does, and the Legislature's use of the term does not change the fact that the 2014 Law selectively grants permission to certain entities to engage in sports gambling.  New Jersey's sports gambling prohibitions remain and no one may engage in such conduct save those listed by the 2014 Law.  While artfully couched in terms of a repealer, the 2014 Law essentially provides that, notwithstanding any other prohibition by law, casinos and racetracks shall hereafter be permitted to have sports gambling.  This is not a repeal; it is an authorization.

Third, the exception in PASPA for New Jersey, which New Jersey did not take advantage of before the one-year time limit expired, is remarkably similar to the 2014 Law.  The exception states that PASPA does not apply to "a betting, gambling, or wagering scheme . . . conducted exclusively in casinos . . . , but only to the extent that . . . any commercial casino gaming scheme was in operation . . . throughout the 10-year period" before PASPA was enacted.  28 U.S.C. § 3704(a)(3)(B).  The exception would have permitted sports gambling at New Jersey's casinos, which is just what the 2014 Law does.  We can easily infer that, by explicitly excepting a scheme of sports gambling in New Jersey's casinos from PASPA's prohibitions, Congress intended that such a scheme would violate PASPA.  If Congress had not perceived that sports gambling in New Jersey's casinos would violate PASPA, then it would not have needed to insert the New Jersey exception.  In other words, if sports gambling in New Jersey's casinos does not violate PASPA, then PASPA's

18

one-year exception for New Jersey would have been superfluous. We will not read statutory provisions to be surplusage. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1178 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). In order to avoid rendering the New Jersey exception surplusage, we must read the 2014 Law as authorizing a scheme that clearly violates PASPA.[7]

As support for their argument that the 2014 Law does not violate PASPA, Appellants cite the 2014 Law's construction provision, which provides that "[t]he provisions of this act . . . are not intended and shall not be construed as causing the State to sponsor, operate, advertise, promote, license, or authorize by law or compact" sports wagering. N.J. Stat. Ann. § 5:12A-8. This conveniently mirrors PASPA's language providing that states may not "sponsor, operate, advertise, promote, license, or authorize by law or compact" sports wagering. 28 U.S.C. § 3702(1).

The construction provision does not save the 2014 Law. States may not use clever drafting or mandatory construction provisions to escape the supremacy of federal law. *Cf. Haywood v. Drown*, 556 U.S. 729, 742 (2009) ("[T]he Supremacy Clause cannot be evaded by formalism.");

---

[7] Granted, the 2014 Law applies to horse racetracks as well as casinos, while the PASPA exception for New Jersey refers only to casinos, but that does not change the significance of the New Jersey exception because it refers to gambling in places that already allow gambling, and the racetracks fall within that rubric.

*Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 382-83 (1990) ("[t]he force of the Supremacy Clause is not so weak that it can be evaded by mere mention of" a particular word). In the same vein, the New Jersey Legislature cannot use a targeted construction provision to limit the reach of PASPA or to dictate to a court a construction that would limit that reach. The 2014 Law violates PASPA, and the construction provision cannot alter that fact.

Appellants also draw a comparison between the 2014 Law and the 2012 Law, which involved a broad regulatory scheme, as evidence that the 2014 Law does not violate PASPA. It is true that the 2014 Law does not set forth a comprehensive scheme or provide for a state regulatory role, as the 2012 Law did. However, PASPA does not limit its reach to active state involvement or regulation of sports gambling. It prohibits a range of state activity, the least intrusive of which is "authorization" by law of sports gambling.

We conclude that the 2014 Law violates PASPA because it authorizes by law sports gambling.[8]

---

[8] Because we conclude that the 2014 Law authorizes by law sports gambling, we need not address the argument made by Appellees and Amicus that the 2014 Law also licenses sports gambling by permitting only those entities that already have gambling licenses or recently had such licenses to conduct sports gambling operations. We also do not address the argument of the State Legislators and the NJTHA that, to the extent that any aspect of the 2014 Law violates PASPA, we should apply the 2014 Law's severability clause. The State Legislators and the NJTHA offer no proposals regarding what

B. Injunctive Relief

The NJTHA argues that the injunction should apply only to the parties who brought this suit and that gambling on the athletic contests of other entities, who are not parties to this suit, should be permitted. But PASPA does not limit its prohibition to sports gambling involving only entities who actually bring suit. PASPA provides that "[a] civil action to enjoin a violation of section 3702 . . . may be commenced . . . by a professional sports organization or amateur sports organization whose competitive game is alleged to be the basis of such violation." 28 U.S.C. § 3703. The NJTHA conflates the Leagues' right to bring suit with the remedy they may obtain. PASPA provides that the Leagues may "enjoin a violation of section 3702," without any limiting language. The 2014 Law violates PASPA in all contexts, not simply as applied to the Leagues, and, therefore, the District Court properly enjoined its application in full.

Finally, we need not dwell on the NJTHA's argument that the Leagues should not be entitled to equitable relief because they have unclean hands. The NJTHA contends that the Leagues are essentially hypocrites because they encourage and profit from sports betting, noting that the NFL has been scheduling games in London where sports gambling is legal, that the NCAA holds events in Las Vegas where sports gambling is legal, and that the Leagues sanction and encourage fantasy sports betting. These allegations fail to rise to the level required for application of the unclean hands doctrine. "The equitable doctrine of unclean hands applies

provisions should be severed from the 2014 Law, and we do not see how we could sever it.

21

when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). It is not "unconscionable" for the Leagues to support fantasy sports and hold events in Las Vegas or London, nor is doing so "immediately related" to the 2014 Law. We cannot conclude that the Leagues acted unconscionably, i.e., amorally, abusively, or with extreme unfairness, in relation to the 2014 Law.

## IV.    Conclusion

The 2014 Law violates PASPA because it authorizes by law sports gambling. We will affirm.

FUENTES, *Circuit Judge*, dissenting.

In response to *Christie I*, where we held that New Jersey's 2012 Sports Wagering Law ("2012 Law") violated PASPA, the New Jersey Legislature passed the 2014 Law. In addition to repealing the 2012 Law in full, the 2014 Law also repealed all prohibitions on sports wagering and any rules authorizing the State to, among other things, license or authorize a person to engage in sports wagering, with respect to casinos and gambling houses in Atlantic City and horse racetracks in New Jersey. The repealer also maintained prohibitions for persons under 21 and for wagering on New Jersey collegiate teams or any collegiate competition occurring in New Jersey. Likewise, the 2014 Law stripped New Jersey of *any* involvement in sports wagering, regulatory or otherwise. In essence, the 2014 Law renders previous prohibitions on sports gambling non-existent.

The majority, however, takes issue with what it terms the "selective" nature of the partial repeal. First, that the repeal applies to specific locations. That is, under the 2014 Law, wagering may only take place at casinos, gambling houses, and horse racetracks. Next, the restriction against betting by persons under the age of 21 would remain, and finally, restrictions against betting on New Jersey collegiate teams or any collegiate competition in New Jersey would remain. These restrictions, the majority concludes, amount to "authorizing" a sports-wagering scheme and, therefore, the 2014 Law must also violate PASPA. I disagree. As I see it, the issue is whether a partial repeal amounts to authorization.

1

Because this logic rests on the same false equivalence[1] we rejected in *Christie I*, I respectfully dissent.

The majority, however, maintains that the 2014 Law "authorizes" casinos and racetracks to operate sports gambling while other laws prohibit sports gambling by all other entities.[2] According to the majority, "this is not a situation where there are *no* laws governing sports gambling in New Jersey" and "[a]bsent the 2014 Law, New Jersey's myriad laws prohibiting sports gambling would apply to the casinos and racetracks."[3] Yet, the majority is mistaken as to the impact of a partial repeal. Repeal is defined as to "rescind" or "an abrogation of an existing law by legislative act."[4] When a statute is repealed, "the repealed statute, in

---

[1] A false equivalence is a logical fallacy which describes a situation where there is a logical and apparent equivalence, but when in fact there is none. This fallacy is categorized as a fallacy of inconsistency. Harry Phillips & Patricia Bostian, *The Purposeful Argument: A Practical Guide, Brief Edition* 129 (2014). In *Christie I*, we held that there was a false equivalence between repeal and authorization. 730 F.3d at 233.

[2] For brevity, I refer to the repeal of prohibitions as applying to casinos, gambling houses, and horse racetracks, with the understanding that the repeal applies to casinos and gambling houses in Atlantic City and horse racetracks in New Jersey for those over 21 not betting on New Jersey collegiate teams or any collegiate competition occurring in New Jersey.

[3] Maj. Op. 16-17.

[4] Black's Law Dictionary 1325 (8th ed. 2007).

regard to its operative effect, is considered as if it had never existed."[5]  A repealed statute is treated as if it never existed; a partially repealed statute is treated as if only the remaining part exists.[6]

The 2014 Law, then, renders the previous prohibitions on sports gambling non-existent.  After the repeal, it is as if New Jersey *never* prohibited sports gambling in casinos, gambling houses, and horse racetracks.  Therefore, with respect to those areas, there are no laws governing sports wagering and the right to engage in such conduct does not

---

[5] 73 Am. Jur. 2d Statutes § 264.

[6] *See, e.g.*, *Ex Parte McCardle*, 74 U.S. 506, 514 (1868) ("[W]hen an act of the legislature is repealed, it must be considered . . . as if it never existed." (internal quotation marks omitted)); *Anderson v. USAir, Inc.*, 818 F.2d 49, 55 (D.C. Cir. 1987) ("Common sense dictates that repeal means a deletion.  This court would engage in pure speculation were it to hold otherwise."); *In re Black*, 225 B.R. 610, 620 (Bankr. M.D. La. 1998) ("Can a statute use a repealed statute?  Is a repealed statute something or is it nothing?  We think the answers are 'no' and 'nothing.'"); *Kemp by Wright v. State*, 687 A.2d 715, 723 (N.J. 1997) ("In this State it is the general rule that where a statute is repealed and there is no saving[s] clause or a general statute limiting the effect of the repeal, the repealed statute . . . is considered as though it had never existed, except as to matters and transactions passed and closed." (quoting *Parsippany Hills Assocs. v. Rent Leveling Bd. of Parsippany-Troy Hills Twp.*, 476 A.2d 271, 275 (N.J. Super. 1984)).

come from the state. Rather, the right to do that which is not prohibited stems from the inherent rights of the people.[7] The majority, however, states that "[a]bsent the 2014 Law, New Jersey's myriad laws prohibiting sports gambling would apply to the casinos and racetracks," and that, as such, "the 2014 Law provides the authorization for conduct that is otherwise clearly and completely legally prohibited."[8] We have refuted this position before. In *Christie I*, we held that "the lack of an affirmative prohibition of an activity does not mean it is *affirmatively* authorized by law."[9] Such an argument, we said, "rests on a false equivalence between repeal and authorization and reads the term 'by law' out of the statute."[10] We identified several problems in making this false equivalence—the most troublesome being that it "reads the term 'by law' out of the statute."[11] The majority's position does just that. In holding that a partial repeal of prohibitions is state authorization, the majority must infer authorization. PASPA, however, contemplates more. In *Christie I,* we pointed to the fact that New Jersey's 2012 amendment to its constitution, which gave the Legislature power to "authorize by law" sports wagering was insufficient to "authorize [it] by law."[12] We explained, "that the Legislature needed to enact the [2012 Law] itself belies any

[7] *Christie I*, 730 F.3d at 232.

[8] Maj. Op. 16-17.

[9] *Christie I*, 730 F.3d at 232.

[10] *Id.* at 233.

[11] *Id.*

[12] *Id.* at 232.

4

contention that the mere repeal of New Jersey's ban on sports gambling was sufficient to 'authorize [it] by law' . . . . [T]he . . . Legislature itself saw a meaningful distinction between repealing the ban on sports wagering and authorizing it by law, undermining any contention that the amendment alone was sufficient to affirmatively authorize sports wagering."[13] This is no less true of a partial repeal than it would be of a total repeal—which the majority concedes would not violate PASPA. Thus, to reach the conclusion that the 2014 Law, a partial repeal of prohibitions, authorizes sports wagering, the majority necessarily relies on this false equivalence. It concedes as much when stating "the 2014 Law" (the repeal) provides "the authorization" for sports wagering. Of course, this is the *exact* false equivalence we identified, and dismissed as a logical fallacy, in *Christie I*.[14]

The majority does not believe it makes this false equivalence. To support its position, the majority relies on the "selective" nature of the 2014 Law contending that "the Legislature's use of the term ['repeal'] does not change the fact that the 2014 Law selectively grants permission to certain entities to engage in sports gambling."[15] First, it does not. There is no explicit grant of permission in the 2014 Law for *any* entity to engage in sports wagering. Second, not only does the majority fail to explain why such a partial repeal is equivalent to granting permission (by law) for these locations, but the very logic of such a position fails. If withdrawing prohibitions on "some" sports wagering is the equivalent to

---

[13] *Id.*

[14] *Id.* at 233.

[15] Maj. Op. 18.

5

authorization by law, then withdrawing prohibitions on *all* sports wagering must be considered authorization by law.[16] Under this logic, New Jersey is left with no choice at all—it must uphold all prohibitions on sports wagering in perpetuity or until PASPA is no more. This is precisely the opposite of what we held in *Christie I*—"[n]othing in these words *requires* that the states keep any law in place"[17]—and why we found PASPA did not violate the anti-commandeering principle.

The majority, along with the United States, conceded that a complete repeal does not violate PASPA. Indeed, in its brief in opposition to New Jersey's petition for certiorari, the United States went as far as to concede that New Jersey could repeal its prohibitions in whole or in part.[18] Simply put, there is nothing special about a partial repeal and it, too, does not violate PASPA. The 2014 Law is a self-executing deregulatory measure that repeals existing prohibitions and regulations for sports wagering and requires the State to abdicate *any* control or involvement in sports wagering. I do

---

[16] Put another way, would a state violate PASPA if it enacted a complete repeal of sports-wagering prohibitions and later enacted limited prohibitions regarding age requirements and places where wagering could occur? There is simply no conceivable reading of PASPA that could preclude a state from restricting sports wagering.

[17] 730 F.3d at 232.

[18] Br. for the United States in Opp'n at 11, *Christie v. Nat'l Collegiate Athletic Ass'n*, Nos. 13-967, 13-979, and 13980 (U.S. May 14, 2014).

6

not see, then, how the majority concludes that the 2014 Law authorizes sports wagering, much less in violation of PASPA.

The majority equally falters when it analogizes the 2014 Law to the exception Congress originally offered to New Jersey in 1992. The exception stated that PASPA did not apply to "a betting, gambling, or wagering scheme . . . conducted exclusively in casinos[,] . . . but only to the extent that . . . any commercial casino gaming scheme was in operation . . . throughout the 10-year period" before PASPA was enacted.[19] Setting aside the most obvious distinction between the 2014 Law and the 1992 exception, that it contemplated a *scheme* that the 2014 Law does not authorize,[20] the majority misses the mark with this comparison when it states: "If Congress had not perceived that sports gambling in New Jersey's casinos would violate PASPA, then it would not have needed to insert the New

---

[19] 28 U.S.C. § 3704(a)(3)(B).

[20] For example, "[Division of Gaming Enforcement ("DGE")] now considers sports wagering to be 'non-gambling activity' . . . that is beyond DGE's control and outside of DGE's regulatory authority." App. 416. At oral argument, Appellants conceded they would have no authority or jurisdiction over sports wagering. *See, e.g.*, Tr. 14:12-15 ("Q: Sports betting is going to take place in the casino with no oversight whatsoever; A: That's right."); Tr. 21:15-20 ("All of the state and federal laws that deal with consumer protection, criminal penalties and the like remain in full force and effect at the sports betting venue. The only thing that doesn't get regulated is the sports betting itself.").

Jersey exception."[21]  Congress, however, did not perceive, or intend, for private sports wagering in casinos to violate PASPA.  Instead, Congress prohibited sports wagering pursuant to state law.  That the 2014 Law might bring about an increase in the amount of private, legal sports wagering in New Jersey is of no moment and the majority's reliance on such a possibility is misplaced.  The majority is also wrong in an even more fundamental way: the exception Congress offered to New Jersey was exactly that, an exception to the proscriptions of PASPA.  That is to say, with this exception, New Jersey could have "sponsor[ed], operate[d], advertise[d], promote[d], license[d], or authorize[d] by law or compact" sports wagering.  Under the 2014 Law, of course, New Jersey cannot and does not aim to do any of these things.

The majority fails to illustrate how the 2014 Law results in sports wagering *pursuant to state law* when there is no law in place as to several locations, no scheme created, and no state involvement.  A careful comparison to the 2012 Law is instructive.  The 2012 Law lifted New Jersey's ban on sports wagering and provided for the licensing of sports-wagering pools at casinos and racetracks in the State.  Indeed, New Jersey set up a comprehensive regime for the licensing and close supervision and regulation of sports-wagering pools.  For instance, the 2012 Law required any entity that wished to operate a "sports pool lounge" to acquire a "sports pool license."  To do so, a prospective operator was required to pay a $50,000 application fee, secure DGE approval of all internal controls, and ensure that any of its employees who were to be directly involved in sports wagering obtained individual licenses from DGE and the Casino Control

---

[21] Maj. Op. 19.

Commission.  In addition, the regime required entities to, among other things, submit extensive documentation to DGE, to adopt new "house" rules subject to DGE approval, and to conform to DGE standards.  This violated PASPA in the most basic way: New Jersey developed an intricate scheme to both authorize (*by law*) and license sports gambling.  The 2014 Law repealed this entire scheme.

Without more, the majority is simply left calling a tail a leg—which, as the adage goes, does not make it so. Because I do not see how a partial repeal of prohibitions is tantamount to "authorizing by law" a sports-wagering scheme in violation of PASPA, I respectfully dissent.